STATE OF CONNECTICUT *v.* CHARLES J. MCNAMARA.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued June 4—decided July 15, 1941.

*Thomas R. FitzSimmons,* for the appellant (defendant).

*Lorin W. Willis,* state's attorney, with whom, on the brief, was *Otto J. Saur,* assistant state's attorney, for the appellee (state).

JENNINGS, J.  The defendant appeals from the judgment finding him guilty of embezzlement, alleging refusal to charge as requested and as required by the facts claimed to have been proved, error in the charge and in rulings on evidence.

The state offered evidence and claimed to have proved the following facts:  The defendant was appointed city tax marshal by the tax collector of Bridgeport on July 20, 1933, and continued as such until January 25, 1940.  By custom, acquiesced in by the tax collector, the defendant did not turn in partial collections on small accounts but was permitted to withhold them until fully paid.  He was entitled to a two dollar writ fee and a 2 per cent commission with a minimum fee of five dollars upon each tax warrant upon which collection was made.  The only checking account maintained by the defendant and his wife was in the First National Bank and Trust Company under the name of "Charles J. McNamara, City Marshal."  The defendant and his wife both made deposits of tax collections and personal funds in this account and checks were drawn thereon to the tax collector and to pay household and personal bills.

No sufficient or accurate record of payments received on account of taxes was kept by him although he made interim reports of collections with remittances. On June 29, 1939, the tax collector requested a report of all tax warrants on which partial collections had been made and not remitted. Between that time and November, 1939, the defendant deposited in his checking account and paid to the tax collector substantial sums, obtained from various sources, to make up the shortage claimed by the state to have existed. These sums were, however, insufficient for that purpose by several thousand dollars. As of July 1, 1939, this shortage amounted to $16,738.62 and was due to felonious misappropriation of money collected by him for the tax collector, with intent to cheat and defraud the city of Bridgeport.

The claims of the defendant did not materially differ from those of the state as to the general method of procedure followed by him, although this was stated in much greater detail, and he specifically claimed that he never knew exactly how his accounts stood. He did claim that with the fees and commissions to which he was entitled, the sums turned over to make up the shortage and a sum of money deposited with his attorney, there was sufficient money paid in or available to make up any shortage existing on the date of his resignation, January 25, 1940. He also claimed that none of the city's money was taken or retained by him with felonious intent.

The defendant assigns as error the refusal to charge nine requests. None of these requests conform to the rule that each shall contain "a single proposition of law clearly and concisely stated, with the citation of authority upon which such suggestion is based. If the request is granted, the court shall apply the proposition of law to the facts of the case." Practice Book,

§ 156. These requests are an illustration of the reason for the rule. They contain long, and somewhat intricate statements of fact, based on the defendant's interpretation of the evidence. As a result it is hard for us, and must have been hard for the trial court, to know the precise point to which the defendant wished to call attention. Analyzing them as well as we can, they relate to the definition of the crime, the effect of the Statute of Limitations, the relevancy of the existence of various claims of proof on the question of felonious intent and effect of the retention of the fees for collection.

The crime was carefully defined. The court charged (par. 127) that "The State must prove that at some time within the limits alleged [July 1, 1935, and June 30, 1939] the defendant did misappropriate some of the City's money with intent to defraud the City as this will be defined to you." This was a sufficient compliance with the request for a charge as to the application of the Statute of Limitations. The evidence is not before us but as far as we can judge from record and briefs, the case turned on the intent with which the money was taken or retained. The charge fully met this situation and meticulously protected the interests of the defendant in this regard. The court charged repeatedly that the state must prove the criminal intent as a fact. It charged that if the defendant used the funds under a belief, honestly entertained, that he had a right to do so, or retained the funds collected under a custom acquiesced in by the tax collector, he was entitled to an acquittal. Finally the court charged that, although the defendant was obliged to keep the city's funds somewhere, he was not obliged to keep them in a separate account, could mingle them with his own funds or keep them in his pocket and that proof of negligence in keeping

his books was no substitute for the necessary proof of specific criminal intent.

Among the requests to charge was one to the effect that if, due to the custom of retaining the fee, a part of the deposit in the checking account belonged to the defendant, he could not be guilty of embezzlement because one cannot embezzle one's own property. There is a conflict as to whether an agent can be convicted of embezzling a fund where he is entitled to retain a part of it as a commission for collection. The weight of modern authority and every consideration of public policy support the view that a conviction of embezzlement can be had under these circumstances. *Commonwealth* v. *Hutchins,* 232 Mass. 285, 288, 122 N. E. 275; *Commonwealth* v. *Smith,* 129 Mass. 104, 109; *Campbell* v. *State,* 35 Ohio St. 70, 75; *Commonwealth* v. *Jacobs,* 126 Ky. 536, 538, 104 S. W. 345, 13 L. R. A. (N. S.) 511, 15 Ann. Cas. 1226 and notes; *Edmondson* v. *State,* 89 Neb. 797, 801, 132 N. W. 527; and see *State* v. *Lanyon,* 83 Conn. 449, 454, 76 Atl. 1095. When an agent has a right to take for himself a part of a fund belonging to his principal, the mass belongs to the latter until the agent has exercised his right. *Commonwealth* v. *Lannan,* 153 Mass. 287, 289, 26 N. E. 858. When the agent takes the entire fund, all agree that he may be found guilty of embezzlement. 1 Brill, Cyclopedia Criminal Law, § 516. There is no difference in principle when the agent embezzles the major part of the fund, though he is entitled to a small percentage of it as commission. When he takes for his own use more than the amount to which he is entitled, he converts money belonging to his principal. The defendant was not entitled to the requested instruction. The defendant also claimed that the court should have charged that the defendant's claimed restoration of the funds

might be good evidence of the lack of felonious intent. As pointed out above, the court charged fully on the necessity of proof of felonious intent. The failure to stress this particular element did not prejudice the defendant. See *Johnson County Savings Bank* v. *Walker*, 82 Conn. 24, 27, 72 Atl. 579.

In an additional assignment of error, the defendant complains of the failure of the court to specifically define the terms appropriation and conversion as used in embezzlement. Aside from the fact that the meaning of these terms is plain from the general discussion in the charge (*State* v. *Reynolds*, 95 Conn. 186, 194, 110 Atl. 844) it was apparently assumed, even by the defendant, that an appropriation and conversion of some amount existed. The assumption runs through the requests to charge, which are based thereon. This, with the emphasis in the charge, discussed above, on the necessity of proof by the state of a criminal intent, made more particular definition of these words unnecessary. Error was found in *State* v. *Enanno*, 96 Conn. 420, 424, 114 Atl. 386, relied on by the defendant, because the distinction between the civil tort, conversion, and the crime of theft was not made clear but the instructions given in this case could have left no doubt in the minds of the jury on this point.

We find no error in the single assignment which is pursued on the brief directed to the charge as delivered.

Mrs. McNamara, wife of the defendant, was deputy tax collector and testified for her husband. He offered, through her, four sets of papers made up in part from exhibits in evidence and in part from the rate books. These exhibits were objected to by the state on the ground that it was entitled to the original records on which they were based under *Elmira Roofing Co.* v. *Gould*, 71 Conn. 629, 42 Atl. 1002, and also on the

ground that the exhibits were not computations which would aid the jury but were mere self-serving recitations of evidence. The defendant then issued a subpoena duces tecum directed to the tax collector. He reported on the afternoon of June 26th that he had not brought the books because there were over one hundred and four of them, because he had no facilities for bringing them to the court house and because, without the books, he would have to close his office. The court absolved the tax collector of contempt and suggested that the defendant procure, under General Statutes, § 5601, certified copies of such records as he needed. The defendant did nothing in response to this suggestion and the trial continued until July 2d. Examination of the exhibits which were marked for identification has led us to the conclusion that they would not have been admissible even if the rate books had been presented. They were made up as of January 31, 1940, whereas the period of embezzlement charged ended June 30, 1939. They contained no totals and carried numerous pencil annotations. It is difficult to see how they would have been helpful to the jury in deciding the case. They were not admissible in any event in the absence of the rate books when objection was made on that ground. Under all the circumstances, we cannot say that the court abused its discretion in refusing to hold the witness in contempt.

There is no error.

In this opinion the other judges concurred.