# TOWN OF BROOKFIELD *v.* CANDLEWOOD SHORES ESTATES, INC.
## (12702)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, JS.

Argued May 6—decision released August 12, 1986

*David S. Grossman,* for the appellant (defendant).

*Paula Flanagan,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. In June, 1984, the plaintiff town of Brookfield, a municipal corporation, commenced suit against the defendant Candlewood Shores Estates, Inc., for the collection of real and personal property taxes, interest, lien fees and attorney's fees. On October 19, 1984, the defendant filed an answer including several special defenses as well as a counterclaim. On January 10, 1985, the plaintiff filed its motion for summary judgment "on the issue of liability and damages" and attached to it two affidavits and certain other materials. At that time, however, the plaintiff had not filed its answer to the defendant's counterclaim. On January 25, 1985, the defendant filed its counteraffidavit and other attached materials opposing the plaintiff's motion for summary judgment. The plaintiff's motion was set down on the short calendar of January 28, 1985, as a nonarguable matter.[1] On that date, and apparently before the 10 a.m. commencement of the short calendar, the plaintiff filed its reply to the counterclaim. The court, *J. Healey, J.,* granted the

---

[1] Practice Book § 211 provides in part: "When Appearance of Counsel Is Not Required at Short Calendar"

"(A) The court, except as hereinafter provided, will decide the following short calendar matters without oral argument and the appearance of counsel at the short calendar: . . . (10) motions for summary judgment . . . ."

Although this rule provides that oral argument may be had at the request of a party to the motion or by the court on its own motion, there is no claim or indication that any such circumstance occurred in this case.

plaintiff's motion on January 28, 1985. The court did not file a written memorandum of decision. The judgment awarded the plaintiff $227,429.28 in principal, $3500 in attorney's fees and $329.20 in costs and ordered that interest continue to accrue at the statutory rate pursuant to General Statutes § 12-193.

The defendant appealed, claiming error in the granting of the summary judgment because: (1) the plaintiff filed its motion for summary judgment before the pleadings were closed in violation of Practice Book § 379;[2] (2) the affidavit of Brookfield's tax collector filed with its motion included evidence that violated the best evidence rule and would be inadmissible at a trial and was therefore in violation of Practice Book § 381;[3] (3) a substantial portion of the debt claimed by the plaintiff is accrued interest which should not have been relied upon by the trial court because it was not supported by any statutory or computational authority or proof; and (4) there exists a genuine issue of material fact raised by the defendant in its special defenses and counterclaim and, therefore, the plaintiff was not entitled to summary judgment as a matter of law. In oral argument before us, the defendant withdrew all of the issues

[2] Practice Book § 379 which concerns the "Scope of [the Summary Judgment] Remedy" provides:

"In any action, except actions for dissolution of marriage, legal separation, or annulment of marriage, and except administrative appeals which are not enumerated in Sec. 257 (d), any party may move for a summary judgment, *provided that the pleadings are closed as between the parties to that motion.* These rules shall be applicable to counterclaims and cross complaints, so that any party may move for summary judgment upon any counterclaim or cross complaint as if it were an independent action." (Emphasis added.)

[3] Practice Book § 381 which concerns the "Form of Affidavits" provides:

"Supporting and opposing affidavits shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto." (Emphasis added.)

it had raised, including the claim that the counter-affidavit was sufficient, except those that claimed that the plaintiff's motion was filed in violation of Practice Book §§ 379 and 381 and the so-called best evidence rule. We find error only in the award of attorney's fees.

We turn to the defendant's initial claim that it was error for the trial court to have granted summary judgment to Brookfield because its motion had been filed before the pleadings were closed in violation of Practice Book § 379. This claim lacks merit. Our rules of practice provide that "any party may move for a summary judgment, provided that the pleadings are closed as between the parties to that motion . . . . " Practice Book § 379. The pleadings were not closed when the plaintiff moved for summary judgment by filing its motion on December 10, 1985. There was in that sense a violation of the rule. We cannot, however, agree with the defendant that this required that the plaintiff's motion "should not have been considered or granted." Without condoning any such violation, we point out that when the plaintiff's motion was filed, the court already had jurisdiction not only of the subject matter and the process but also of all the parties to this motion. See *Telesco* v. *Telesco,* 187 Conn. 715, 719–20, 447 A.2d 752 (1982); *LaBow* v. *LaBow,* 171 Conn. 433, 440, 370 A.2d 990 (1976). This procedural failure by the plaintiff did not, in any fashion, have the effect of terminating or ousting the jurisdiction of the trial court. At most, it made the trial court's action in granting the summary judgment technically erroneous, but that error was rendered harmless by later circumstances, including the filing of the answer to the counterclaim, the lack of actual prejudice to the defendant, and the presumed consideration by the trial court, required under the circumstances, of the closed pleadings in deciding the plaintiff's motion. See *French* v. *Brown,* 424 S.W.2d 893, 894 (Tex. 1967) (no jurisdictional flaw where court

granted summary judgment prior to expiration of ten day period after filing motion). Harmless error analysis has been employed both under the Federal Rules of Civil Procedure and state rules where, in the absence of prejudice, summary judgment rules have not been followed.[4]

In oral argument before this court, the defendant argued that because the plaintiff did not file its answer to the defendant's counterclaim until the morning of January 28, 1985, shortly before the opening of the short calendar session on which the plaintiff's summary judgment motion appeared, it was not known whether the court had knowledge that the answer had been filed, and thus may not have considered it in deciding the summary judgment motion. We note, however, that the judgment file, which is "the proper evidence of the rendition of the judgment and its terms"; *State* v. *Lindsay*, 109 Conn. 239, 243, 146 A. 290 (1929); *Brown* v. *Cray*, 88 Conn. 141, 146, 89 A. 1123 (1914); shows that judgment was rendered not on January 25, 1985, the date of the hearing, but on January 28, 1985.

The clerk of the Superior Court is a public officer of the state judicial department. See *Morgan* v. *Schmid*, 27 Conn. Sup. 481, 244 A.2d 824 (1965). The receipt, filing, recording and processing of pleadings in a pending matter are encompassed by his general duties under

---

[4] Rule 56 (c) of the Federal Rules of Civil Procedure affords the parties a period of ten days between the service of the motion and the hearing to support or oppose the motion with suitable materials. "Even where a formal motion [for summary judgment] is made, the trial court may not ignore the requirement that the motion be served at least 10 days before hearing, but the defect is waivable and subject to the harmless error rule." 6 Moore, Federal Practice (2d Ed. 1986) ¶ 56.14[1], p. 56–356; see *Ikerd* v. *Lapworth*, 435 F.2d 197 (7th Cir. 1970) (not reversible error where court entered summary judgment against appellant prior to expiration of ten day period where appellant made no claim "of any specific resulting prejudice"); *Township of Benton* v. *County of Berrien*, 570 F.2d 114 (6th Cir. 1978); *Fender* v. *General Electric Co.*, 380 F.2d 150 (4th Cir. 1967) (both applying harmless error analysis to violation of ten day rule).

the statutes. See, e.g., General Statutes §§ 51-52, 51-52a.[5] Public officers, acting in their official capacity, are presumed, until the contrary appears, to have acted legally and properly. *Connecticut State Employees Assn.* v. *Board of Trustees,* 165 Conn. 757, 766, 345 A.2d 36 (1974); *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 568, 345 A.2d 520 (1973); see *State* v. *Main,* 69 Conn. 123, 140, 37 A. 80 (1897). This presumption has been held to apply to clerks of court. See *James* v. *Municipal Court,* 45 Cal. App. 3d 557, 560, 119 Cal. Rptr. 606 (1975); *Palmer* v. *Emery,* 91 Ill. App. 207, 214 (1900); *Moreno* v. *Vietor,* 261 Iowa 806, 813, 156 N.W.2d 305 (1968); *Rim Group* v. *Mountain Mesa Uranium Corporation,* 78 Wyo. 204, 210, 321 P.2d 229 (1958); 14 C.J.S., Clerks of Court § 46. It can therefore be presumed, since nothing on the record appears to the contrary, that the clerk took the necessary steps to make the plaintiff's answer to the defendant's counterclaim available to the judge who acted on the summary judgment motion for his consideration in passing on that motion.

In addition, as to judges and courts, under the law of evidence, "it is presumed, unless the contrary appears, that judicial acts and duties have been duly and regularly performed, the presumption of regularity attending the acts of public officers being applicable to judges and courts and their officers . . . . " 29 Am. Jur. 2d, Evidence § 170; *Houston* v. *Hennessey,* 534 S.W.2d 52 (Mo. App. 1975); *Hamlin* v. *Hamlin,* 302 N.C. 478, 276 S.E.2d 381 (1981); see *Laundry, Dry Cleaning, Dye House Workers Union, Local 3008* v.

---

[5] General Statutes § 51-52 (c) provides: "Temporary assistant clerks shall have the same duties as clerks of court."

General Statutes § 51-52a (d) provides in part: "Deputy chief clerks, clerks, deputy clerks and assistant clerks shall have the same powers as chief clerks of the superior court, subject to the direction of the chief clerk . . . ."

General Statutes § 51-52a (f) provides: "A temporary assistant clerk shall have the same powers as clerks of the court."

*Laundry Workers International Union,* 4 Wis. 2d 542, 556, 91 N.W.2d 320 (1958); see also *Cornett* v. *Williams,* 87 U.S. (20 Wall) 226, 249–50, 22 L. Ed. 254 (1874); 29 Am. Jur. 2d, Evidence § 171. The general rule that a judgment, rendered by a court with jurisdiction, is presumed to be valid and not clearly erroneous until so demonstrated raises a presumption that the rendering court acted only after due consideration, in conformity with the law and in accordance with its duty. See *Livingston* v. *Moore,* 32 U.S. (7 Pet.) 469, 546, 8 L. Ed. 751 (1833); *Ennis* v. *Giblin,* 147 Fla. 113, 115–16, 2 So. 2d 382 (1941); *Diehl* v. *Heimann,* 248 Wis. 17, 20, 20 N.W.2d 556 (1945); 46 Am. Jur. 2d, Judgments § 28. We have said that "[a] judgment is entitled to reasonable presumptions in support of its validity." *Kelly* v. *New Haven Steamboat Co.,* 75 Conn. 42, 47, 52 A. 261 (1902); *Miller* v. *Bridgeport Herald Corporation,* 134 Conn. 198, 202, 56 A.2d 171 (1947). The correctness of a judgment of a court of general jurisdiction is presumed in the absence of evidence to the contrary. We do not presume error. The burden is on the appellant to prove harmful error. See, e.g., *General Electric Supply Co.* v. *SNETCO,* 185 Conn. 583, 603, 441 A.2d 581 (1981). The record before us is completely barren of any indication that the summary judgment rendered by the court below was infirm because of the defect suggested by the defendant on this branch of its claim.

We turn now to the defendant's claim that the Brookfield tax collector's affidavit supporting the summary judgment motion included, in violation of Practice Book § 381 and the best evidence rule, evidence that would have been inadmissible at trial and, therefore, should not have been considered by the trial court in deciding the motion. This claim is without merit.

The plaintiff attached to its motion for summary judgment, inter alia, the affidavit of Theresa York, the

Brookfield tax collector, dated December 11, 1984. York's affidavit, after setting out that she was "duly sworn [and] depose[d]," recites that she was the tax collector of Brookfield and "as such, [was] familiar with the subject matter of [this] suit." It also recites that the defendant is "presently the owner of each of those lots in Exhibit A to [the] Plaintiff's Complaint"[6] with the exception of certain lots described in the affidavit. In addition, it avers that "[a] complete and accurate breakdown of the taxes due and owing from the defendant . . . on each lot which they own is attached [to York's affidavit] as Exhibit A-77 inclusive. Said Exhibits include principal, interest and lien fees by year through the first half of the list of October 1, 1983 with interest calculated through November 1984."[7] Id. There is also attached, as Exhibit B, a memorandum from York on her official stationery as tax collector giving a detailed three page recitation of the method and percentages used by her in calculating the interest figures. It concludes by reciting that interest after November 30, 1984, should continue at the statutory rate and that there exist no setoffs. Finally, the affidavit is subscribed and sworn to by York before what appears to be a proper authority.

York's affidavit comports with the requisites of an affidavit; it is a written statement taken under oath before an authorized officer. 2A C.J.S., Affidavits § 2; 3 Am. Jur. 2d, Affidavits § 1; see generally State v. Wolfe, 156 Conn. 199, 205, 239 A.2d 509 (1968). Generally speaking, affidavits are used for, and should contain, a presentation of facts by a person having knowledge of those facts, and the facts recited must

---

[6] Examination of the court file discloses that there is attached to the original complaint as Exhibit A a list of 82 lots described by block location, lot number, highway name, the taxes due, the lien fee, the list number and the map book location by book and page number.

[7] Exhibit A1 through A77 consists of 77 pages and includes the percentage at which the interest on each lot's taxes was computed by the affiant.

be those requisite to establish the principal facts sought to be maintained. See 2A C.J.S., Affidavits § 43. Specifically, as to summary judgment, "[s]upporting and opposing affidavits 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' Practice Book § 381; *Citizens National Bank* v. *Hubney,* [182 Conn. 310, 312, 438 A.2d 430 (1980)]; *Evans Products Co.* v. *Clinton Building Supply, Inc.,* [174 Conn. 512, 514, 391 A.2d 157 (1978)]." *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 111, 491 A.2d 368 (1985). The operative facts stated by York in her affidavit, which encompasses the exhibits attached, are matters within her personal knowledge as the tax collector of Brookfield. Her affidavit specifically recites that, as the tax collector, she is "familiar with the subject matter of [this] suit." It is recognized that "[a]n affidavit may be used to introduce documentary or other written proof, and in that event such written materials should be attached to the affidavit or served with it" as they were in this case. 6 Moore, Federal Practice (2d Ed.) ¶ 56.11[1.–2], p. 56–200; see 3 Am. Jur. 2d, Affidavits § 20. If, as one court has said, "[a]n affidavit should set forth the factual picture by a person who knows the facts"; *People* v. *Mirasola,* 35 Misc. 2d 886, 887, 231 N.Y.S.2d 645 (1962); the York affidavit does so.

Moreover, these facts would be "admissible in evidence" despite the defendant's claim that to admit them would violate the "best evidence" rule and Practice Book § 381. The defendant claims that although the tax records are matters of public record, they are still subject to the operation of the "best evidence" rule. The defendant therefore claims that either the original documents or duly certified copies are required as the best evidence of the taxes assessed and claimed by Brookfield to be owing. We do not agree.

The best evidence rule is not applicable to this case.[8] McCormick defines the rule thus: "[I]n proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent." McCormick, Evidence (3d Ed. 1984) § 230. Most modern commentators follow Wigmore, who rejected the theory that the rule was basically aimed at the prevention of fraud, and maintain instead that the "basic premise justifying the rule is the central position which the written word occupies in the law." McCormick, supra, § 231. It is because of this centrality, opines McCormick, that "presenting to a court the exact words of a writing is of more than average importance, particularly in the case of operative or dis-

---

[8] In claiming that the best evidence rule is applicable, the defendant cites *Cherniske* v. *Jajer*, 171 Conn. 372, 370 A.2d 981 (1976), and *State* v. *McNamara*, 128 Conn. 273, 22 A.2d 10 (1941), to support its position. Neither *Cherniske* nor *McNamara* avail the defendant because of our conclusion that the best evidence rule is not applicable to this case.

Even if it were applicable, neither case would change the result we reach. In *Cherniske*, which involved a will contest, the value of certain real estate was in issue. To prove the value of the land at the time of the testator's death, the contestants offered a newspaper article which listed the previous year's assessments of the value of area property and the new assessments made in a subsequent revaluation. In finding error on the admission of the newspaper article, we pointed out that to do so violated "the so-called best evidence rule." *Cherniske* v. *Jajer*, supra, 377. In doing so, we stated: "As the tax assessments are matters of public record; see General Statutes § 12-55; they are subject to the operation of the best evidence rule. See 29 Am. Jur. 2d, Evidence, § 482. No valid excuse was given in this case for the failure to present the actual records or certified copies thereof. Therefore, the newspaper article was clearly inadmissible." Id. In the case before us, unlike *Cherniske*, we have the safeguard of the oath on an affidavit of a public officer in which a wilful misstatement would be perjurious. In addition, it is the affidavit of *the* municipal official who oversees the municipal tax collection operations and who is, fairly viewed, the official custodian of such records. Her familiarity with such records insofar as this litigation is concerned is specifically sworn to by her in the affidavit. As explicated in the opinion above, unlike *Cherniske*, a "valid excuse" did exist for not producing the actual records. Moreover, even if the mat-

positive instruments such as deeds, wills or contracts, where a slight variation of words may mean a great difference in rights." Id. Common sense and fairness dictate that the necessity for the production on this motion of the original records does not exist here as critically as it would with, for example, a will, a deed or a contract. Although the rule was originally perceived to be of possible application to all kinds of evidence; see *Barnum* v. *Barnum,* 9 Conn. 242, 248–49 (1832); it has tended to become "now chiefly confined to the rule that the terms of a document must be proved by the production of the document itself, unless production is not feasible: see . . . Wigmore, Evidence (2d Ed.), section 1174." *Commonwealth* v. *Joyce,* 316

---

ters set out in the affidavit were hearsay in part, none of them constitutes that double-layered hearsay demonstrated by the newspaper article in *Cherniske.*

In *McNamara,* the defendant, the Bridgeport city tax marshal who had been appointed by the tax collector, was charged with the crime of embezzlement because of felonious misappropriation of money collected by him for the tax collector. At his trial, the defendant offered into evidence through his wife, who was the deputy tax collector, four sets of papers made up in part from exhibits in evidence and in part from the rate books. The state objected to the offer on the ground that it was entitled to the original records on which the exhibits were based under *Elmira Roofing Co.* v. *Gould,* 71 Conn. 629, 42 A. 1002 (1899), and also because they were self-serving recitations of evidence. The defendant then issued a subpoena duces tecum to the tax collector. The latter reported to the court that he had not brought the books to court because "there were over one hundred and four of them, because he had not facilities for bringing them to the courthouse and because, without the books, he would have to close his office." See *State* v. *McNamara,* supra, 279. The court absolved the tax collector of contempt and suggested to the defendant that he procure under General Statutes § 5601 (the precursor of what is now General Statutes § 52-165) certified copies of such records. The defendant did not do so.

In *McNamara,* this court held that the trial court did not abuse its discretion in refusing to hold the tax collector in contempt. This is significant considering the reasons the tax collector gave the trial court in *McNamara* for not producing the one hundred and four tax rate books. In any event, the trial court "suggested" that the defendant procure certified copies under a statute which, parenthetically, was not the precursor of the statute, i.e., General Statutes § 12-55, referred to in *Cherniske.* That "suggestion" which was not followed was not a ruling that the best evidence rule applied and this court's opinion in *McNamara* is no basis for saying that it did.

Pa. 434, 439, 175 A. 422 (1934); *Commonwealth* v. *Krukoff,* 223 Pa. Super. 395, 397, 302 A.2d 388 (1973); McCormick, supra, § 231; 32A C.J.S., Evidence § 777. In any event, the best evidence rule "at common law is a preferential, rather than an exclusionary rule." Comment on Rule 602 Clause (a) of the Model Code of Evidence (American Law Institute) p. 301; *Fauci* v. *Mulready,* 337 Mass. 532, 540, 150 N.E.2d 286 (1958); *Vreeland* v. *Essex Lock & Mfg. Co.,* 135 Vt. 1, 5, 370 A.2d 1294 (1976); see *Commonwealth* v. *Joyce,* supra, 439. In *Vreeland,* the Vermont Supreme Court said: "[T]he rule is not intended as an exclusionary one; it is merely a rule of preference operating as a special exception to the rules of testimonial preference." *Vreeland* v. *Essex Lock & Mfg. Co.,* supra.

It is true that the original tax records are with the defendant's adversary in this litigation, but no claim is made that the defendant was unable to examine them thoroughly nor did it seek any continuance to do so to assist it in resisting the plaintiff's summary judgment motion. In addition, the general view is that courts will not require the removal of public records and documents that are required by law to be retained by their official custodian in a public office designated for their custody. McCormick, supra, § 240. While we need not decide this specific question, it is apparent that to require removal of the Brookfield tax records relevant to this motion would not only tend to disrupt the function of the tax collector's office but might possibly result in loss or damage to such records. There is widespread authority for the view that records that are too voluminous to be produced and examined conveniently in court may be summarized and their import testified to by a witness, usually an expert, who has reviewed them in their entirety. McCormick, supra, § 233; see, e.g., *Elmira Roofing Co.* v. *Gould,* 71 Conn. 629, 42 A. 1002 (1899); *State* v. *Schrader,* 64 N.M. 100,

324 P.2d 1025 (1958); *Keen* v. *O'Rourke,* 48 Wash. 2d 1, 5, 290 P.2d 976 (1955); 66 A.L.R. 1206 (right of witness to give summary based on inspection of a number of documents); see also *State* v. *Hayes,* 127 Conn. 543, 600–601, 18 A.2d 895 (1941).

In this case, while the underlying records were not physically in court, they were subject to the defendant's inspection as public records. At oral argument, the plaintiff's counsel stated that that town's tax collector's records were maintained in ledgers and were not computerized. The record does not show that the defendant at any time sought to bring them in or offered certified copies itself nor did it move the court for an order to continue the matter so that it might examine them more closely. The method by which the plaintiff chose to present the materials on summary judgment, together with the absence of any evidence that the defendant sought to give substance to its opposition by availing itself of its access to such records, is underscored by the plaintiff's uncontradicted representation that to require the production of certified copies would have meant obtaining approximately 800 documents in addition to the plaintiff's calculation of interest. The expertise of the tax collector in this case is not seriously questioned. Her methodical mathematical calculations, based upon public records available to the defendant, hardly bar summary judgment. Not only is her affidavit, which incorporates the materials referred to above, made on personal knowledge, but it sets forth facts that would be admissible in evidence and shows affirmatively that she is competent to testify to the matters stated. See Practice Book § 381. There was no error in the rendering of summary judgment; see, e.g., *Burns* v. *Hartford Hospital,* 192 Conn. 451, 455, 472 A.2d 1257 (1984); except on the award of attorney's fees to which we now turn.

The plaintiff's attorney appended to its motion for summary judgment her affidavit in support of the claim for attorney's fees in which she set out that she had spent "substantial time in prosecuting [the] matter." She chronicled what she had done in this complex case and concluded the affidavit by stating: "I believe that a reasonable fee for my services in this matter is $3,500.00." As part of its summary judgment, the trial court awarded attorney's fees in the amount of $3500. It was error to award attorney's fees.[9]

In the United States, the general rule of law known as the "American Rule" is that "a prevailing litigant ordinarily is not entitled to collect a reasonable attorney's fee from the opposing party as part of his or her damages or costs. *Alyeska Pipeline [Service] Co.* v. *Wilderness Society,* 421 U.S. 241, 247, [95 S. Ct. 1612, 44 L. Ed. 2d 141] (1975)." *Watkins* v. *Labor & Industry Review Commission,* 117 Wis. 2d 753, 758, 345 N.W.2d 482 (1984); *Campana* v. *Muir,* 615 F. Sup. 871, 873 (M.D. Pa. 1985) *Oklahoma Publishing Co.* v. *Miskovsky,* 654 P.2d 596, 599–600 (Okla. 1982); 6 Moore, supra, ¶ 54.77[n]; 7 Am. Jur. 2d, Attorneys at Law § 238. There are certain exceptions to this rule. See, e.g., *Campana* v. *Muir,* supra, 874; *Philadelphia Gear Corporation* v. *F.D.I.C.,* 587 F. Sup. 294, 298 (W.D. Okla. 1984), rev'd, 476 U.S. 426, 106 S. Ct. 1931,

---

[9] At oral argument before us, we raised the question of the propriety of the award of attorney's fees. The plaintiff's counsel, in colloquy with the court, indicated that it was "probably true" that the award of such fees was error although she maintained that this had not been raised by the defendant as an issue. Although this matter was not briefed by the parties, we do note that the defendant's memorandum of law filed in opposition to the plaintiff's motion for summary judgment states: "Although the plaintiff is seeking legal fees, no statutory authority is given." In any event, we consider the award of attorney's fees in this case to constitute plain error. We may apply the plain error doctrine "although [such error was] unnoticed by the parties" or the trial court. *Stoni* v. *Wasicki,* 179 Conn. 372, 377, 426 A.2d 774 (1979); see also *Greenwood* v. *Greenwood,* 191 Conn. 309, 315, 464 A.2d 771 (1983).

90 L. Ed. 2d 428 (1986); *Watkins* v. *Labor & Industry Review Commission,* supra; see also Moore, supra. In the main, exceptions are based upon statutory or contract provisions authorizing the recovery of attorney's fees by a prevailing litigant. We have been directed to no exceptions that can fairly be said to authorize the attorney's fees awarded nor do we perceive any authority to do so on this record. No statutory or contractual basis for such a recovery is evident. The general view appears to be that costs and fees are taxable and recoverable in proceedings to collect municipal taxes when and to the extent that that is empowered and fixed by statute or ordinance under legislative authorization. See 64 C.J.S., Municipal Corporations § 2083; see also 16 McQuillin, Municipal Corporations (3d Ed. Rev.) § 44.135e; McCormick, Damages (1935) p. 244.

This litigation was an action to collect a debt and was clearly and admittedly not a foreclosure. General Statutes §§ 12-181 and 12-182 (foreclosure of municipal tax liens). General Statutes § 12-193 permits, inter alia, that "reasonable attorney's fees incurred by a municipality as a result of any foreclosure action brought pursuant to section 12-181 or 12-182 and directly related thereto shall be taxed in any such proceeding against any person or persons having title to any property so foreclosed." These statutes are simply not applicable to this action. It was error to award attorney's fees in this matter.

There is error only in the award of attorney's fees, the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified in accordance with this opinion.

In this opinion SHEA, DANNEHY and SANTANIELLO, Js., concurred.

PETERS, C. J., concurred in the result.