******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

THE BANK OF NEW YORK MELLON *v.*
ACHYUT M. TOPE ET AL.
(AC 40959)

Elgo, Cradle and Devlin, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property
owned by the defendant T. The action was commenced in July, 2014,
and the trial court first entered a judgment of foreclosure by sale in
November, 2014. Subsequently, T filed multiple motions to open and
extend the sale date. The court again entered a judgment of foreclosure
by sale in November, 2016. T then filed several motions to dismiss,
alleging that the court did not have subject matter jurisdiction on the
ground that the plaintiff did not have standing to commence this action.
In September, 2017, T filed a motion to open and stay the judgment, again
challenging the plaintiff's standing and the subject matter jurisdiction
of the court. The court denied T's motion, and T appealed to this court.
*Held* that T could not prevail on his claim that the trial court erred in
denying his motion to open and vacate the foreclosure judgment on the
ground that the plaintiff lacked standing and the court lacked subject
matter jurisdiction: this court was presented with a collateral attack by
T on the foreclosure judgment because, although T appeared in this
case approximately thirty days prior to the entry of the first foreclosure
judgment, he never directly challenged that judgment or the second
judgment of foreclosure by sale, did not challenge the plaintiff's standing
or the court's jurisdiction until more than two years after he filed his
appearance, and failed to demonstrate or even argue that the court's
lack of subject matter jurisdiction was entirely obvious, failing to rebut
the presumption of the validity of the foreclosure judgment; moreover,
the facts and circumstances did not constitute the exceptional case in
which the lack of jurisdiction was so manifest as to warrant review, as
the record revealed that three different trial court judges examined the
record and considered T's arguments and reviewed the documents he
submitted, and one judge examined the original note upon which both
foreclosure judgments were based, specifically finding that the plaintiff
had standing to commence the action; furthermore, because T was
afforded multiple opportunities to present his arguments in full to the
trial court, it could not reasonably be argued that he was deprived of
a fair opportunity to litigate the issue of standing, and he similarly failed
to furnish any strong policy reason to allow the otherwise disfavored
collateral attack on the foreclosure judgment.

(*One judge dissenting*)

Argued September 10, 2020—officially released February 9, 2021

*Procedural History*

Action to foreclose a mortgage on certain of the
defendants' real property, and for other relief, brought
to the Superior Court in the judicial district of New
Haven, where the defendants were defaulted for failure
to appear; thereafter, the named defendant was
defaulted for failure to plead; subsequently, the matter
was tried to the court, *Hon. Thomas J. Corradino*, judge
trial referee; judgment of foreclosure by sale; thereafter,
the court denied the named defendant's motion to open
and vacate the judgment, and the named defendant
appealed to this court. *Affirmed.*

*Thomas P. Willcutts*, for the appellant, with whom,
on the brief, was *Achyut M. Tope*, self-represented, the
appellant (named defendant).

*William R. Dziedzic*, for the appellee (plaintiff).

*Opinion*

CRADLE, J. The defendant Achyut M. Tope[1] appeals from the denial of his motion to open and vacate the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, The Bank of New York Mellon, formerly known as The Bank of New York, as Successor to JPMorgan Chase Bank, N.A., as Trustee for Structured Asset Mortgage Investments II, Inc., Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2004-3. The defendant claims that the trial court erred in denying his motion to open and vacate because the plaintiff lacked standing to commence this action and, consequently, the trial court lacked subject matter jurisdiction over it. The plaintiff contends that it had standing to commence this action and that this appeal constitutes an impermissible collateral attack on the court's foreclosure judgment, which initially was entered in 2014 and from which the defendant did not appeal. We agree with the plaintiff that the defendant's appeal from the motion to open and vacate constitutes an impermissible collateral attack on the foreclosure judgment, and, accordingly, affirm the trial court's denial of the defendant's motion to open and vacate.

The record reveals the following relevant factual and procedural history. On October 31, 2003, the defendant executed a promissory note in the amount of $134,000, payable to HSBC Mortgage Corporation (USA) (HSBC). To secure that note, the defendant mortgaged property located at 387 Sherman Avenue in New Haven (property) to HSBC. The note was later endorsed to "JPMorgan Chase Bank, as Trustee." On January 15, 2014, HSBC assigned the mortgage to the plaintiff.[2]

On July 17, 2014, the plaintiff filed the present action seeking to foreclose on the mortgage. The defendant filed his appearance on October 9, 2014, and, on October 28, 2014, he was defaulted for failing to plead. On November 10, 2014, the court, *Hon. Thomas J. Corradino*, judge trial referee, entered a judgment of foreclosure by sale, with a sale date set for February 7, 2015.

On January 20, 2015, the defendant filed his first motion to open and extend the sale date. The court granted the motion and set a new sale date for June 20, 2015. The defendant subsequently filed three additional motions to open the foreclosure judgment—on March 9, 2015, August 31, 2015, and January 6, 2016—resulting in further extensions of the sale date.[3] On March 8, 2016, the defendant filed a fifth motion to open, claiming that there was more than $100,000 of equity in the property and he had applied for a loan modification. On April 11, 2016, the court granted the defendant's motion and vacated the foreclosure judgment.

On June 17, 2016, the plaintiff filed a motion for a judgment of strict foreclosure. On November 21, 2016, the court, *Avallone, J.*, entered a judgment of foreclo-

sure by sale and set a sale date for February 11, 2017.[4]

On January 3, 2017, the defendant filed a motion to open and stay the judgment on the ground that he had obtained a financial audit that "provides strong supporting documentation that the plaintiff does not have standing to pursue a foreclosure action with respect to the property in this action."[5] The defendant sought to stay this action "to preserve his rights" because he filed a new action involving additional properties that he owns, which, he claimed, was being removed to federal court.

On January 4, 2017, the defendant filed a motion for summary judgment alleging, inter alia, that the plaintiff lacked standing to bring this action because the plaintiff failed to show "the proper chain of ownership, assignment and control of the note and mortgage and property with affidavits from persons with knowledge . . . ."[6] At the February 6, 2017 hearing on the defendant's motion to open, the defendant represented to the court, *Avallone, J.*, that the arguments in his motion to open and motion for summary judgment were "generally" the same. Accordingly, the court allowed the defendant, at his request, to argue his motion for summary judgment at that hearing. Following extensive argument by the defendant, the court denied both of his motions. The court expressly rejected the defendant's challenge to the plaintiff's standing, stating: "I've given you sufficient opportunity to make your arguments. I don't believe that they hold water." On March 1, 2017, the defendant filed a motion to reargue both motions, which the court summarily denied.

On February 10, 2017, the defendant filed a motion to dismiss, again alleging lack of subject matter jurisdiction on the ground that the plaintiff did not have standing to commence this action.[7] On February 27, 2017, the defendant filed another motion to dismiss the action for lack of subject matter jurisdiction, citing to the arguments that he previously raised in his motion for summary judgment. On March 24, 2017, the defendant filed a third motion to dismiss, "in addition to and [in] further [support of]" his prior two motions to dismiss and his motion for summary judgment, for lack of subject matter jurisdiction.

On April 17, 2017, the court, *Avallone, J.*, held a hearing on the defendant's motion to dismiss dated February 27, 2017. At the hearing, the defendant argued that he had two copies of the note which were irreconcilably different, thereby proving that the plaintiff was not the holder of the note and therefore did not have standing. The defendant presented those two copies to the court. The defendant argued: "[T]he original note that I signed . . . which I have asked over and over and over in . . . court, docketed in many times, many motions, many pleadings, has not been shared. And I don't know whether . . . the first time when the court approved

. . . the foreclosure sale and the second time when it did, the court must have looked at the two original documents." In response, the plaintiff presented the original note to the defendant. The defendant acknowledged that his signature was on the original note.

The court then asked the defendant how the two copies of the note that he had presented were relevant since the foreclosure judgment was entered on the basis of the original note. The defendant "object[ed] [to] whether Judge Corradino had possession of the original note" when he entered the foreclosure judgment in 2014. The court explained to the defendant that it had already heard the defendant's arguments a "multitude" of times, but agreed to review the proceedings that occurred before Judge Corradino in 2014. The court recessed briefly to do so.

Upon resuming the hearing, the court stated that it had listened to the recording of the proceeding before Judge Corradino in 2014 and explained that "[t]here is nothing out of order . . . in Judge Corradino's actions in the court that day that would lead me to believe that there is any evidence, that there is anything improper as to the documents that were . . . filed." The court explained to the defendant: "I've listened to your arguments consistently. You've made an argument about the notes. I don't accept your argument that there is anything inappropriate by there being copies, multiple copies of a note." The defendant pressed his argument regarding his claimed improprieties with the assignments, and the court responded: "I have looked at the original note. That's what . . . I'm concerned with. And I'm satisfied that there is nothing inappropriate . . . by this court's action or by the actions of Judge Corradino. And you've presented nothing to me that . . . would . . . make me think otherwise. And so I've denied your motion to dismiss." The court set a new sale date of August 19, 2017. On April 24, 2017, the court, *Avallone, J.*, marked off the defendant's motion to dismiss that was filed on February 10, 2017. On May 1, 2017, the defendant filed another motion to dismiss challenging the plaintiff's standing to pursue this action.

On May 30, 2017, the court, *Pittman, J.*, held a hearing on the defendant's February 10, 2017 motion to dismiss. At that hearing, the defendant again was afforded the opportunity to present his arguments challenging the plaintiff's standing, the same arguments that he made in his previous motion to dismiss dated February 27, 2017, and his motion for summary judgment. The defendant summarized his argument by again asserting that the plaintiff was not the holder of the note. The court told the parties that it would consider all of the prior filings regarding standing and indicated that it would issue a written decision. On June 6, 2017, the court, *Pittman, J.*, issued a written order denying the February 10, 2017 motion to dismiss. The court explained:

"This motion, #162, was previously considered by Judge Avallone in open court on April 24, 2017. At that time, Judge Avallone marked this motion off, having determined that it raised the same issues as #164, which was denied by Judge Avallone on April 17, 2017, #164. The court will not continue to revisit issues that have been previously decided and that constitute the law of the case. Moreover, a judgment has entered in this matter and a motion to dismiss is not properly before the court in the absence of an order granting a motion to open the judgment."

On June 28, 2017, the defendant filed a motion to open and to extend the sale date on the ground that he was making progress in his efforts to sell the subject property. The court extended the sale date to October 21, 2017.

On September 28, 2017, the defendant filed a motion to open and to vacate the judgment of foreclosure by sale, wherein he again argued that the plaintiff lacked standing to commence this action and, consequently, the court lacked subject matter jurisdiction over it, and asked that the action be dismissed "in its entirety with prejudice." On October 16, 2017, the court, *Hon. Thomas J. Corradino*, judge trial referee, held a hearing on the defendant's motion, at which the defendant again presented his argument to the court. On October 17, 2017, the court, *Hon. Thomas J. Corradino*, judge trial referee, issued an order denying the defendant's motion to open and vacate the foreclosure judgment.[8] It is from this denial of the defendant's September 28, 2017 motion to open and vacate the foreclosure judgment, which first entered on November 10, 2014, and was entered again on November 21, 2016, that the defendant now appeals.

The defendant claims that the trial court erred in denying his motion to open and vacate the foreclosure judgment because the plaintiff lacked standing to pursue foreclosure against him and thus the trial court lacked subject matter jurisdiction over this action. The plaintiff has steadfastly maintained throughout the litigation of the defendant's myriad of postjudgment motions that it is the holder of the note and thus has standing to pursue this action. The plaintiff argues that this appeal constitutes an impermissible collateral attack on the foreclosure judgment. We agree with the plaintiff.

We begin by noting that "[i]t is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Financial Consulting, LLC* v. *Commissioner of Ins.*, 315 Conn. 196, 226, 105 A.3d 210 (2014). "To be sure, it is often stated that [a] claim that a court lacks subject matter jurisdiction may be raised at any time during the proceedings . . . including on appeal . . . ."

(Internal quotation marks omitted.) *Rider* v. *Rider*, 200 Conn. App. 466, 478, 239 A.3d 357 (2020).

"Our jurisprudence, however, has recognized limits to raising a collateral attack setting forth a claim of lack of subject matter jurisdiction. . . . Although challenges to subject matter jurisdiction may be raised at any time, it is well settled that [f]inal judgments are . . . presumptively valid . . . and collateral attacks on their validity are disfavored. . . .

"The reason for the rule against collateral attack is well stated in these words: The law aims to invest judicial transactions with the utmost permanency consistent with justice. . . . Public policy requires that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . . [T]he law has established appropriate proceedings to which a judgment party may always resort when he deems himself wronged by the court's decision. . . . If he omits or neglects to test the soundness of the judgment by these or other direct methods available for that purpose, he is in no position to urge its defective or erroneous character when it is pleaded or produced in evidence against him in subsequent proceedings. Unless it is *entirely invalid* and that fact is disclosed by an inspection of the record itself the judgment is invulnerable to indirect assaults upon it. . . .

"[I]t is now well settled that, [u]nless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she must resort to direct proceedings to correct perceived wrongs . . . . A collateral attack on a judgment is a procedurally impermissible substitute for an appeal. . . . [A]t least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so. . . . Our Supreme Court further explained that such a collateral attack is permissible only in rare instances when the lack of jurisdiction is entirely obvious so as to amount to a fundamental mistake that is so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority . . . [or] the exceptional case in which the court that rendered judgment lacked even an arguable basis for jurisdiction." (Citations omitted; internal quotation marks omitted.) Id., 479–80.

Here, although the defendant appeared in this case approximately thirty days prior to the entry of the first foreclosure judgment, he never directly challenged that judgment or the November 21, 2016 judgment of foreclosure by sale.[9] See *Saunders* v. *KDFBS, LLC*, 335 Conn. 586, 592–94, 239 A.3d 1162 (2020) (judgment of foreclo-

sure by sale is final appealable judgment). We therefore are presented with a collateral attack by the defendant on the foreclosure judgment rendered on November 21, 2016, by way of his September 28, 2017 motion to open, on the basis of a claim that the trial court lacked subject matter jurisdiction over this case.[10] The defendant has failed, however, to demonstrate, or even argue, that the trial court's lack of subject matter jurisdiction is entirely obvious. The defendant did not challenge the plaintiff's standing or the court's jurisdiction until more than two years after he filed his appearance. Following the entry of the second foreclosure judgment, the defendant challenged the plaintiff's standing multiple times, as set forth in detail herein. In response to the defendant's multiple postjudgment motions challenging the plaintiff's standing, three different trial court judges examined the record, considered the defendant's arguments and reviewed the documents that he submitted, and rejected the defendant's challenge to the court's subject matter jurisdiction.[11] The record reflects that Judge Avallone examined the original note upon which both foreclosure judgments were based and specifically found that the plaintiff had standing to commence this action.[12] The record does not reveal a clear lack of standing. Because the defendant has not proven that it was entirely obvious that the trial court lacked jurisdiction in this matter, he has failed to rebut the presumption of the validity of the foreclosure judgment.

Moreover, because the defendant was afforded multiple opportunities to present his arguments in full to the trial court, it cannot reasonably be argued that the defendant was deprived of a fair opportunity to litigate the issue of standing. The defendant has similarly failed to furnish, nor are we aware of, any strong policy reason to allow this otherwise disfavored collateral attack on the foreclosure judgment. Accordingly, we are not persuaded that the facts and circumstances of this matter constitute the exceptional case in which the lack of jurisdiction was so manifest as to warrant review at this point in the proceedings.[13] We therefore decline to consider this collateral attack to the subject matter jurisdiction of the court.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion, ELGO, J., concurred.

[1] Geeta A. Joshi-Tope also was named as a defendant in the underlying foreclosure action, but she is not a party to this appeal. We therefore refer in this opinion to Achyut M. Tope as the defendant.

[2] HSBC assigned to the plaintiff: "[T]he said Mortgage having an original principal sum of $134,000.00 with interest, secure thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage."

[3] The sale date was extended to September 26, 2015, February 27, 2016, and April 30, 2016, respectively. We note that the court held hearings on each of these motions and the defendant appeared and was afforded the opportunity to be heard at those hearings.

[4] At the November 21, 2016 hearing, at which the defendant was present, the court expressly indicated that it was "reviewing the note of October 31, 2003. I find it to be in order, initialed as an original on each page, signed by the borrowers as an original.

"Open ended mortgage of even date likewise signed and appropriate.

"There's an assignment of that mortgage dated January 15, 2014. . . .

"[The] plaintiff is entitled to bring the action."

[5] The plaintiff refers to "attached exhibit A," but there were no exhibits attached to his motion.

[6] In his motion for summary judgment, the defendant also alleged "fraud in the concealment"; "fraud in inducement"; "intentional infliction of emotional distress"; "slander of title"; "quiet title"; "violation of . . . 15 U.S.C. § 1601 et seq."; and "violation of . . . [12] U.S.C. § 2601 et seq."

[7] We note that the foreclosure auction proceeded as scheduled on February 11, 2017. The court, however, denied the committee's motion to approve the sale because the high bid was too low, and ordered the deposit to be returned to the high bidder.

[8] Judge Corradino issued the following written order on October 17, 2017: "This complaint was filed in July of 2014. The defendant did not raise arguments as to the plaintiff's standing for over two years. The affidavit filed by the servicer of the loan which was taken out in 2003, and on which no payments have been made since 2013, clearly states that the plaintiff is the holder of the note and the mortgage—this affidavit was filed under oath in September of 2014. It was filed under oath by a party who would have no apparent interest in falsifying its report. For the reasons set forth concisely at pages 5 through 10 of the plaintiff's memorandum in opposition to a prior motion to dismiss (#186) as holder of the note the plaintiff has standing. *Fleet National Bank* v. *Nazareth*, 75 Conn. App. 791, 818 A.2d 69 (2003), is not applicable to the facts of this case. This court's conclusion on the lack of standing issue is consistent with the prior rulings raising this issue previously on this case."

[9] The defendant also never challenged the default that had been entered against him.

[10] We disagree with the dissent's contention that the November 21, 2016 foreclosure judgment was no longer operative after the court opened it to extend the sale date. In *RAL Management, Inc.* v. *Valley View Associates*, 278 Conn. 672, 899 A.2d 586 (2006), our Supreme Court emphasized the "substantive distinction between opening a judgment to modify or to alter incidental terms of the judgment, leaving the essence of the original judgment intact, and opening a judgment to set it aside." Id., 690. The court concluded that "when the only change to the original judgment involved the extension of a sale date—an incidental term—the substantive terms of the original judgment remained intact, and the opening of the judgment did not render the original judgment void." *Nelson* v. *Dettmer*, 305 Conn. 654, 678 n.19, 46 A.3d 916 (2012), citing *RAL Management, Inc.* v. *Valley View Associates*, supra, 691. Thus, because the motions to open that followed the November 21, 2016 judgment only extended the sale date of the property, an incidental term ordered to effectuate that judgment, the November 21, 2016 judgment remained intact. And, because the defendant failed to appeal from the November 21, 2016 foreclosure judgment, and the motion to open from which he now appeals was not filed within four months of that judgment, as prescribed by General Statutes § 52-212a, this appeal, in our view, is a collateral attack on the November 21, 2016 foreclosure judgment.

[11] We note that the fact that three different trial court judges heard the defendant's standing arguments and examined the documentary evidence that he submitted, in itself, belies any argument that the lack of subject matter jurisdiction is entirely obvious.

[12] Although the record of the 2014 foreclosure hearing does not expressly reflect that Judge Corradino reviewed the note, our Supreme Court has held that the lack of such an explicit finding is not indicative of error. To the contrary, the court reasoned that in entering the foreclosure judgment, "necessary to the court's finding that the plaintiff had standing to enforce the note is the subsidiary or threshold finding that the plaintiff was, in fact, the holder of that instrument, as the plaintiff alleged in its complaint. See General Statutes § 42a-3-301. Indeed . . . under Practice Book § 23-18, the court was required to review the note, mortgage and affidavit of debt before finding . . . the [amount of the] debt [and] . . . the value of the property and . . . [entering the judgment of] foreclosure [by sale]. It is well established that, 'under the law of evidence, it is presumed, unless the contrary appears, that judicial acts and duties have been duly and regularly performed,

the presumption of regularity attending the acts of public officers being applicable to judges and courts and their officers . . . . The general rule that a judgment, rendered by a court with jurisdiction, is presumed to be valid and not clearly erroneous until so demonstrated raises a presumption that the rendering court acted only after due consideration, in conformity with the law and in accordance with its duty. . . . The correctness of a judgment of a court of general jurisdiction is presumed in the absence of evidence to the contrary. We do not presume error. The burden is on the appellant to prove harmful error.' . . . *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 6–7, 513 A.2d 1218 (1986); see also *Rosenblit* v. *Danaher*, 206 Conn. 125, 134, 537 A.2d 145 (1988) ('we are entitled to assume, unless it appears to the contrary, that the trial court . . . acted properly'). Consequently, in the absence of any evidence or other indication to the contrary, it is reasonable to presume that the trial court acted in accordance with law and examined the note and mortgage prior to rendering judgment of . . . foreclosure." (Citation omitted.) *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 131–32, 74 A.3d 1225 (2013).

[13] At oral argument before this court, the plaintiff suggested that this court take judicial notice of documents that it submitted showing succession of the trustee. Because those documents were not presented to the trial court, and are immaterial to our resolution of this appeal, we decline to take judicial notice of them.