STATE of Minnesota, ex rel, Jeffrey SAUER, Supervisor, Child Support Collections Division, on Behalf of Isolde Heidrun PLAGENS, Petitioner, Respondent,

v.

Jeffery HELLESVIG, Appellant.

No. C3-85-772.

Court of Appeals of Minnesota.

Nov. 12, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, T. Frank Norton, Asst. County Atty., Duluth, for respondent.

James J. Bang, Knetsch & Bang, Duluth, for appellant.

Heard, considered and decided by POPO-VICH, C.J., and WOZNIAK and HUSPE-NI, JJ.

## OPINION

HUSPENI, Judge.

The trial court denied appellant Jeffery Hellesvig's motion to condition his child support payments on visitation rights to his daughter. Hellesvig argues that Minn. Stat. § 518.612 (1984) which precludes interference with visitation rights as a defense to child support obligations, is unconstitutional as applied to him. We affirm.

## FACTS

In 1971, Hellesvig, then a U.S. serviceman stationed in West Germany, acknowledged paternity of a child born to a West German resident. This acknowledgment was followed by a judgment that ordered Hellesvig to make child support payments. He has since returned to the United States and resides in Minnesota.

After Hellesvig repeatedly failed to meet his child support obligations, the West German government's Institute for Guardianship petitioned the St. Louis County Court under the Uniform Reciprocal Enforcement of Support Act [URESA] to enforce Hellesvig's child support obligations. The St. Louis County Court recognized the West German government's petition and ordered Hellesvig to make the payments. During the course of these proceedings, the St. Louis County Social Service Department corresponded with the German Institute for Guardianship about Hellesvig's visita-

tion rights. The Institute for Guardianship indicated that the child's mother did not wish her daughter to have contact with her natural father.

Hellesvig's compliance with the support order was erratic. On May 24, 1984, the trial court issued an order to show cause why Hellesvig should not be held in civil contempt and have the child support payments withheld from his wages. Hellesvig responded by moving the court for an order that would declare Minn.Stat. § 518.612 unconstitutional as applied to him and make his child support obligations contingent on his visitation rights with his daughter. The trial court refused to find § 518.612 unconstitutional and found that Hellesvig had raised no legal defense to the enforcement of his child support obligations.

## ISSUE

■ Is Minn.Stat. § 518.612, which precludes interference with visitation rights as a legal defense to nonpayment of child support, unconstitutional as applied to appellant?

## ANALYSIS

Minn.Stat. § 518.612 (1984) provides in part that:

[I]nterference with visitation rights [is not] a defense to nonpayment of support. If a party fails to make support payments, or interferes with visitation rights, * * * the other party may petition the court for an appropriate order.

A similar provision is found in the Uniform Reciprocal Enforcement of Support Act. *See* Minn.Stat. § 518C.16 (1984).

Hellesvig argues that section 518.612 is unconstitutional as applied to him because he has no other legal remedy to secure his visitation rights with his daughter. He claims that the distance, expense and strict West German laws favoring the mother's wishes deprive him of remedies available to other parents.

The separation of visitation and support issues has been carefully preserved by the courts. Visitation issues cannot be considered when setting the level of support or when enforcing a support order. *England v. England*, 337 N.W.2d 681, 684 (Minn. 1983); *Colorado ex rel. McDonnell v. McCutcheon*, 337 N.W.2d 645, 650 (Minn. 1983).

This separation of visitation and support issues reflects the fact that the primary consideration in any proceeding to enforce a support order must be the welfare of the child. By keeping the two issues separate, the child is protected from being deprived of support because of a dispute between the parents which may precipitate visitation problems. *Wisconsin ex rel. Southwell v. Chamberland*, 361 N.W.2d 814, 816–17 (Minn.1985). Further, if visitation issues were considered in support proceedings, some individuals may be deterred from invoking the URESA, which would also deprive the child of the needed support. *Wisconsin ex rel. Hubbard v. Hubbard*, 110 Wis.2d 683, 688, 329 N.W.2d 202, 205 (1983).

Hellesvig claims that this separation of issues is fair if the child resides in a jurisdiction that has adopted the Uniform Child Custody Jurisdiction Act (UCCJA) because the noncustodial parent then has a remedy available to enforce his or her visitation rights. However, inasmuch as West Germany has not adopted the UCCJA or comparable legislation, Hellesvig argues that he is left without a remedy to enforce his visitation rights.

Hellesvig argues that the trial court should have issued an order requiring that he be given his daughter's present address and telephone number, be informed of her health and be permitted to make appropriate contact with her when he travels to Germany. Such relief would be inappropriate under Minn.Stat. § 518.612.

■ Further, this matter does not present any facts that would permit a Minnesota court to assume jurisdiction of visitation rights under Minn.Stat. § 518A.03 (1984) (the jurisdictional provision of the UCCJA). The child is not and never has been present in Minnesota. Minnesota is not the child's home state, the best inter-

ests of the child do not require Minnesota to assume jurisdiction and evidence about the child's welfare does not appear to be available in Minnesota. One or more of these factors would have to be present for Minnesota to assume jurisdiction under the UCCJA. Further, the Minnesota Supreme Court has expressly stated that:

> Participation in a ˙URESA proceeding does not confer jurisdiction upon a court over the parties thereto in another proceeding.

*England,* 337 N.W.2d at 685.

German law does, however, provide a remedy for Hellesvig under 4 Burgerliches Gesetzbuch § 1711 (W.Ger.). That section sets out the procedures for establishing personal contact between a father and his illegitimate child. Initially, the person caring for the child decides if the father will have visitation rights. The father can also petition the West German Guardianship Court to determine if visitation would serve the welfare of the child. In this case, Hellesvig, through the St. Louis County Social Service Department, has already requested that the child's mother allow visitation and the˙ West German Institute for Guardianship has indicated that she will not grant visitation privileges. However, Hellesvig has not taken advantage of the other remedy provided under Section 1711, which is to petition the West German Guardianship Court for a determination of whether visitation would serve his daughter's welfare. While this remedy may be inconvenient and expensive, it is available to Hellesvig.

We can fully appreciate the frustration and distress that a parent experiences when he is unable to maintain contact with his child. However, we must recognize the purposes and the limitations of URESA and UCCJA. The public policy considerations behind those purposes and limitations are sound. While a public policy which encourages visitation between a parent and a child is also sound, the best interests of the child here must be paramount. We must permit decisions regarding visitation with her father to be made by the appropriate authorities in the jurisdiction where she resides.

### DECISION

Appellant cannot raise interference with visitation rights as a legal defense to an order enforcing his child support obligations. Minn.Stat. § 518.612 is constitutional as applied to appellant.

Affirmed.