MONICA FISCHER *v.* ROBERT P. GOLDSTEIN
(4669)

SPALLONE, O'CONNELL and NORCOTT, Js.

Argued February 2—decision released May 24, 1988

*Robert P. Goldstein,* pro se, the appellant (respondent).

*William J. Wholean,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (petitioner).

*Paul M. Palten* filed a brief for the appellee (petitioner).

O'CONNELL, J. The respondent father appeals from a decision of the trial court rendered pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA); General Statutes §§ 46b-180 through 46b-211; finding paternity of his illegitimate child now living in the Federal Republic of Germany.[1] General Statutes § 46b-180 et seq. The trial court found the Federal Republic of Germany (hereinafter West Germany) to be a "state" within the meaning of General Statutes § 46b-180 (12). The respondent had previously filed and appealed from the denial of a writ of habeas corpus to determine the custody of the child.[2] Dismissal of the habeas corpus action for lack of personal jurisdiction was affirmed by our Supreme Court. *Goldstein* v. *Fischer,* 200 Conn. 197, 510 A.2d 184 (1986).

The present action was commenced in 1983 for the support of the child when the requisite URESA documents were sent to the Connecticut Superior Court by the initiating court in West Germany.[3] On October 21, 1985, the Superior Court ordered the respondent to pay child support. The respondent appeals claiming the trial court erred (1) in establishing a duty of support since an adjudication of paternity was never made nor was there a finding that paternity was previously estab-

---

[1] The amount of the support orders entered at the same time are not the subject of this appeal, but the right of the court to enter any support orders is inextricably interrelated with the issue of the court's right to determine paternity.

[2] The habeas corpus action was commenced under the Uniform Child Custody Jurisdiction Act, General Statutes § 46b-90 et seq.

[3] The German Institute for Guardianship in Heidelburg.

lished, (2) in not finding that the respondent was denied due process of law as guaranteed by the United States and Connecticut constitutions, (3) in not finding that the respondent was denied equal protection of the law as guaranteed by the United States and Connecticut constitutions, (4) in not finding that the respondent was deprived of the privileges and immunities guaranteed to all citizens of Connecticut and of the United States, and (5) in granting the petitioner's motion for support. We find no error.

I

In his first claim of error, the respondent argues that no formal adjudication of paternity had been made in this action nor had paternity previously been established. An examination of the transcript discloses that this statement is incorrect. The trial court expressly found that "[t]he existence [of facts] necessary for paternity is found" and also that "the gentleman is the father of the child." Any possible, but certainly not probable, ambiguity in the trial court's intention in making these remarks was removed by the court's clear enunciation in its articulation that "[o]n September 23, 1985, the court made a finding of paternity." Further, throughout the trial court proceedings, the respondent expressly and repeatedly acknowledged that he was the father of the child. The defendant also unequivocally declared that he was the father in his pro se appearance before this court.

The respondent's repeated declarations, some of which were under oath, furnished a sufficient foundation for the trial court's determination of paternity. It would be unrealistic to expect the trial court to listen to the respondent's fervent declarations that he was the father and then to hold that he was not. This court also refuses to participate in such judicial folly.

Moreover, the trial court in the present case could take judicial notice of the trial court file in the prior habeas corpus proceeding; *State* v. *Lenihan,* 151 Conn. 552, 554, 200 A.2d 476 (1964); in which the respondent averred, "I am the father of the illegitimate child, Esther Fischer, born 6 March 1982."

· The law does not require that an acknowledgement of paternity meet the formal requirements of General Statutes § 46b-172 to serve as the basis for a paternity determination. *State* v. *Wolfe,* 156 Conn. 199, 206, 239 A.2d 509 (1968). There are three exceptions to this rule: (1) paternity proceedings brought by the mother, pursuant to General Statutes § 46b-160; (2) proceedings by a putative father, pursuant to General Statutes § 46b-172a; and (3) voluntary acknowledgement of paternity, pursuant to General Statutes § 46b-172. No authority can be found to support the respondent's contention that paternity can only be established through proceedings pursuant to General Statutes §§ 46b-172, 46b-172a and 46b-173.[4]

The fact that this is a URESA action and not a traditional paternity proceeding is no impediment to the trial court's finding of paternity. It is well established that a court sitting in a URESA proceeding has jurisdiction to determine paternity. See annot., 81 A.L.R.3d 1175, Determination of Paternity of Child as Within Scope of Proceeding Under [URESA].

## II

The remainder of the claims of error are subsumed in the respondent's argument that because West Germany will not grant him visitation rights, the courts of the United States are constitutionally barred from

[4] General Statutes § 46b-173 relied upon by the petitioner, merely provides for the filing of agreements entered into pursuant to General Statutes § 46-172, and does not present an additional means of determining paternity.

finding that he is the father of the illegitimate child residing in that country.[5] The defendant apparently claims that this barrier precludes the court from finding that the defendant owes a duty of support to the child. We conclude that these claims are beyond the scope of a URESA action and, therefore, are not within the scope of permissible review.

The defendant's argument presumes that support payments are conditioned on the ability to exercise visitation rights. This is not the law. "The duty to support is wholly independent of the right of visitation." *Raymond* v. *Raymond,* 165 Conn. 735, 742, 345 A.2d 48 (1974). This established principle is followed in other jurisdictions adjudicating URESA-based litigation. See, e.g., *Moffat* v. *Moffat,* 27 Cal. 3d 645, 612 P.2d 967, 165 Cal. Rptr. 877 (1980); *State ex rel. Sauer* v. *Hellesvig,* 376 N.W.2d 503 (Minn. App. 1985).

The sole purpose of URESA is the provision of child support, not visitation. "This duty of support is the only subject matter covered by URESA. Nothing in the act allows the adjudication of child custody or visitation privileges or other matters commonly determined in domestic relation cases." *Pifer* v. *Pifer,* 31 N.C. App. 486, 489, 229 S.E.2d 700 (1976). In view of the holding in *Raymond* v. *Raymond,* supra, that the duty of support and privilege of visitation are unrelated, the respondent's contention that West Germany's denial of visitation rights and other parental privileges renders this court constitutionally powerless to declare paternity and support, is simply without merit. A similar constitutional challenge was raised in *State ex rel.*

---

[5] Although the defendant relies on both the federal and state constitutions, he offers no separate analysis of the Connecticut constitution as a basis for different treatment of the federal and state claims. We decline to undertake such analysis. *State* v. *Carey,* 13 Conn. App. 69, 72 n.1, 534 A.2d 1234 (1987).

*Sauer* v. *Hellesvig,* supra,[6] which also concerned a URESA petition for support of an illegitimate child born to a West German resident. The Minnesota court held therein that the duty of support is independent of any visitation privileges, that the trial court was without jurisdiction to decide issues of visitation, and that the respondent father should pursue his remedies in the jurisdiction most able to promote the best interests of the child, which is the jurisdiction of the child's residence. See also *Kline* v. *Kline,* 260 Ark. 550, 551, 542 S.W.2d 499 (1976).

We agree with the Minnesota court's ruling and note that the petitioner in the present case is not without redress. "German law does . . . provide a remedy for [the respondent] under 4 Burgerliches Gesetzbuch § 1711 (W. Ger.). That section sets out the procedures for establishing personal contact between a father and his illegitimate child. Initially, the person caring for the child decides if the father will have visitation rights. In the event of his dissatisfaction, the father can petition the West German Guardianship Court to determine if visitation would serve the welfare of the child . . . . While this remedy may be inconvenient and expensive, it is available to [the respondent]." *State ex rel. Sauer* v. *Hellesvig,* supra, 506. We conclude that it would be wholly inappropriate for this court to delve into matters beyond the scope of URESA. Accordingly, we decline to give further review to the respondents constitutional claims.

There is no error.

In this opinion the other judges concurred.

[6] In URESA cases, this court gives great weight to decisions from other jurisdictions in compliance with the mandate of General Statutes § 46b-209, which provides that "[t]his part shall be so construed as to effect its general purpose to make uniform the laws of the states which enact it."