## STATE OF CONNECTICUT *v.* LAWRENCE WOLFE

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued February 8—decided February 27, 1968

*Howard F. Zoarski,* for the appellant (defendant).

*Richard E. Rapuano,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellee (state).

House, J. This case began when the state commissioner of welfare filed in the Circuit Court a petition for an order requiring the defendant to contribute to the support of a child who, having been committed to the care and custody of the welfare commissioner by the Juvenile Court, was the beneficiary of state welfare assistance. The petition alleged that the child was committed, that the state had expended $3913.11 for her support, that the defendant is the father of the child "having acknowledged in writing his paternity of said child under date of August 8, 1959," that by the same instrument wherein the paternity was acknowledged the defendant agreed to pay $10 per week to the commissioner for her support and that the sum of $3959.96 is now due "under said paternity acknowledgment and support agreement." The petition prayed that, in accordance with what is now § 17-324 of the General Statutes, the defendant be summoned for a hearing concerning the issuance of an order by the court for the payment of such support as the court should find reasonably commensurate with his financial circumstances.

It is unnecessary to consider in detail all the pleadings, proceedings and complications arising out of a transfer of jurisdiction from the Court of Common Pleas to the Circuit Court. The plaintiff

introduced and relied on an agreement dated August 8, 1959, and entered into between the defendant and the child's mother, an unmarried woman. The agreement recited that "the said Lawrence Wolfe is the father" of the child, that the mother had instituted bastardy proceedings against him which were then pending and that in consideration of her agreement not to continue those proceedings the defendant would pay $10 per week for eighteen years for the support of the child, the payments to be made to the state welfare commissioner. The agreement was signed under seal by both the defendant and the child's mother in the presence of two witnesses.

At the trial, the defendant attempted to try the issue of his paternity of the child, but the court restricted the hearing to the issues of the authenticity, validity and effect of the 1959 acknowledgment and support agreement and a determination of the amount in which the defendant was in arrears. In answer to the only question submitted for their determination, the jury found that the defendant had not signed the acknowledgment and support agreement as a result of coercion and duress, which he had pleaded as a special defense.

In rendering judgment, the court relied strictly on the provisions of what is now § 17-324 of the General Statutes. This statute, as amended in 1963 (Public Acts 1963, No. 73 § 2), expressly authorizes the Circuit Court to make and enforce orders for the payment of support to the state welfare department directed to the husband, wife, father, mother or child of any person being supported by the state. It contains the following specific provision: "For purposes of this section, the term 'father' shall include a person who has acknowledged in writing

his paternity of a child born out of wedlock, and the court shall have authority to determine, order and enforce payment of any accumulated sums due under a written agreement to support such child." Finding that the defendant had acknowledged in writing his paternity of the child and had agreed to pay $10 a week to the welfare commissioner for her support, and the jury having found that the agreement was not signed as a result of coercion and duress, the court found that the arrearage under the agreement was $2960, and it ordered that the defendant pay $10 per week for the current support of the child and $20 per week toward the arrearage.

The defendant appealed to the Appellate Division of the Circuit Court, assigning numerous errors. The Appellate Division found no error in the record, judgment, proceedings and decisions of the trial court and rendered judgment accordingly. The defendant then petitioned for certification for appeal to this court. Certification was granted, limited, however, to the question whether the unsworn acknowledgment of paternity supports the judgment. That is the only question before us on this appeal. No other aspect of the appeal is involved.

It has long been the policy of this state to require that when a person is unable to support himself and has a husband or wife, father or mother, or children who are able to provide such support, it shall be provided by them. This policy is expressed in what is now § 17-320 of the General Statutes. Since 1951 (Cum. Sup. 1951, § 554b), there has been a supplemental statutory provision for judicial determination and enforcement of orders that a legally liable relative contribute to the state welfare department

for the support of an indigent being supported by the state. These provisions are now contained in § 17-324 of the General Statutes.

It has also long been the policy of this state to require a father to support his illegitimate child. The first provision to effectuate this policy appears to have been enacted in 1645. See 1 Col. Rec. 129. By statute enacted in 1673 (Statutes, 1673, p. 6), if a man was found to be the reputed father and if the mother remained constant in her accusation, that man was liable for maintenance of the child. Although mere reputation is no longer a sufficient basis for legally imposed liability for the support of an illegitimate child and the putative father is now liable in bastardy proceedings only if he has been proven guilty or has under oath acknowledged his paternity; General Statutes §§ 52-442, 52-442b; the procedure for judicially determining liability has remained substantially unchanged. It is provided for in chapter 911 of the General Statutes, now entitled "Paternity Proceedings." An important purpose of the bastardy procedure is to save the public from the burden of supporting an illegitimate child. *Pelak* v. *Karpa,* 146 Conn. 370, 372, 151 A.2d 333.

In addition to the problem of paternal support for the illegitimate child, the law, from early times, has been concerned with its status. By the common law of England the child was nullius filius. 1 Blackstone, Commentaries, p. 458; *Heath* v. *White,* 5 Conn. 228, 232. Accordingly, where a statute, without making any specific reference to illegitimates, imposes on a parent or other person the duty of supporting a minor child, such statute has generally been held to apply to legitimate children only, and an illegitimate child was considered to have no

standing thereunder. See note, "Illegitimate child as within statute relating to duty to support child," 30 A.L.R. 1075. Connecticut, however, did not accept the common-law rule but, on the contrary, recognized a bastard as the child of his mother, with all the rights and duties of a child, including the rights of support and inheritance from her. *Pelak* v. *Karpa,* supra, 372; *Moore* v. *Saxton,* 90 Conn. 164, 168, 96 A. 960. Accordingly, it was early held in this state that, although "[b]y the common law no doubt the terms 'child' and 'children,' when used in statutes, wills, and legal instruments generally, meant legitimate child and legitimate children, just as positively as if the term 'legitimate' were prefixed," nevertheless, our legislature understood the terms "so far as the mother was concerned," to comprehend her illegitimate as well as her legitimate offspring. *Dickinson's Appeal,* 42 Conn. 491, 506.

It was within the context of this historical development of the law that the General Assembly adopted the statutory provisions to be considered on the present appeal. Number 639, § 2, of the 1959 Public Acts amended the chapter of the statutes then entitled "Bastardy Proceedings" to add the substance of what is now General Statutes § 52-442b. This statute provides that, in lieu of or in conclusion of statutory paternity proceedings, a written acknowledgment of paternity executed by the putative father of the child shall, when filed in court, have in such proceedings the same force and effect as a judgment and that an agreement for the child's support shall have the same force and effect as an order of support entered by the court. This paternity-proceeding statute expressly provides: "Such written acknowledgments and agreements to support shall be sworn to . . . ."

In amending the legally-liable-relative support statute upon which the present action is predicated, the General Assembly recognized the anomalous legal status of an illegitimate child by expressly providing that for the purposes of this support statute the term "father" shall include a male who has in writing acknowledged his paternity of a child born out of wedlock. Significantly, although § 52-442b expressly requires that a "written acknowledgement" and support agreement which is executed "in lieu of or in conclusion of [paternity] proceedings under section 52-435a" shall be sworn to, in this support statute the legislature made no requirement that either the written acknowledgment of paternity or the support agreement which the court was authorized to enforce need be sworn to. Public Acts 1963, No. 73 § 2 (General Statutes § 17-324). Nevertheless, it is the contention of the defendant that the judgment in the present case cannot be supported because his acknowledgment of paternity was not sworn to or acknowledged.

It is not uncommon for the legislature to require that certain documents be acknowledged or verified. Such an acknowledgment is a public declaration or a formal statement of the person executing an instrument made to the official authorized to take the acknowledgment that the execution of that instrument was his free act and deed. 1 Am. Jur. 2d 445, Acknowledgments, § 1; see General Statutes, c. 6 (Uniform Acknowledgment Act). On the other hand, a requirement that a document be "sworn to" contemplates the execution of an affidavit that the facts contained in it are true. 3 Am. Jur. 2d 380, Affidavits, § 2; see General Statutes § 33-285 (corporate documents); § 52-466 (habeas corpus applications); § 52-471 (applications for injunctions);

§ 52-442b (acknowledgments of paternity in bastardy proceedings). It is noted that § 17-324 itself requires that the support petition brought in this action be instituted by a verified petition, whereas there is no requirement that the written acknowledgment of paternity or the support agreement be verified or acknowledged before an authorized official. The language of § 17-324 is plain, and it cannot be construed to embrace a requirement which obviously it does not. *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 57, 119 A.2d 325. As used in this statute the word "acknowledge" can only be taken in its usual and common meaning which is "[t]o own, avow, or admit; to confess; to recognize one's acts, and assume the responsibility therefor." Black, Law Dictionary (4th Ed.); Webster, Third New International Dictionary.

We conclude that the defendant's unsworn but written acknowledgment of paternity, coupled as it is with his contract to support the child whose paternity he has admitted, is sufficient to meet the requirements of § 17-324 and support the judgment rendered in this case enforcing the terms of that agreement.

There is no error on the limited issue raised on this appeal.

In this opinion the other judges concurred.