[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED OCTOBER 25, 1996
The plaintiff has filed a complaint seeking dissolution of her marriage and other relief, returnable to this court on February 28, 1995. She has alleged that "The plaintiff and the defendant have one (1) minor child issue, to wit: Felicia Ruth Muniz, born November 7, 1985." The defendant, by answer dated July 7, 1995, has denied paternity of Felicia Ruth Muniz. On August 22, 1995 the defendant filed Motion for Order of Blood Grouping Tests. He filed an amendment to this motion on September 27, 1995 to make clear his desire for DNA testing of the blood of the plaintiff, the defendant and the minor child, Felicia. A CT Page 8655-A hearing was held in regard to this motion and briefs were filed. Both the plaintiff and counsel for Felicia oppose the motion for blood tests.
The following facts are found. The parties to this divorce action were married on January 2, 1987, fourteen months after the birth of Felicia. Prior to February 1985, the plaintiff resided in Florida with Robert Rice. Their cohabitation had included sexual intercourse. Early in February, in response to a request from the plaintiff, the defendant went to Florida to help the plaintiff move to New Jersey to reside with him. Immediately upon living together the plaintiff and the defendant embarked upon a sexual relationship. A few weeks after they started living together, the plaintiff discovered that she was pregnant. Felicia was born on November 7, 1985. The defendant was present at the time of her birth. The defendant was still married to his first wife while he and the plaintiff cohabited. He was divorced in 1985. At all times, but a 10-month interlude in 1985, the parties have lived together until this divorce action. That interlude in 1985 was concluded by the parties deciding to marry, which they did. Felicia has spent her entire 9 years calling the defendant "Daddy." He is the only father CT Page 8655-B she has ever known and he had no reason to believe that he is anything but her father. The defendant's relatives are all fixed in the constellation of this 9-year-old's family: his parents are known to her as Grandma and Grandpa, his siblings are her aunts and uncles, their children her cousins, his older children her half-siblings.
At Felicia's birth the defendant and plaintiff agreed that Felicia would be given his surname, Muniz. This is reflected on her birth certificate. He agreed that he would raise Felicia as his child. As the world has known over her years growing up, the defendant is her father. He covers Felicia on his family health insurance plan. Defendant has supported Felicia well. They have enjoyed a good relationship together.
The plaintiff is not sure whether the defendant, or Robert Rice, is the biological father of Felicia. At one point early in Felicia's life, the plaintiff discussed with the defendant seeking child support from Mr. Rice. The defendant dissuaded her from that by telling her that "they were doing O.K." and it would not be good for Felicia's mental health. When Felicia was 3-4 years old, the parties had an argument during a Florida vacation. CT Page 8655-C In anger, the plaintiff invited Mr. Rice over to their resort to view Felicia. Plaintiff referred to him as the real father in that argument with the defendant. Mr. Rice came over. Felicia never met him because she was in the pool, oblivious. The incident ended. The plaintiff has not been in contact with Mr. Rice since then.
The defendant, in furtherance of his motion, urges the court to order blood tests since there is no presumption of paternity here, as there would be for a child born during the marriage. Holland v. Holland,188 Conn. 354, 357, 449 A.2d 1010 (1982). Equally, the defendant argues that the subsequent marriage does not create a presumption of paternity because there is no acknowledgement of actual biological parentage by these parties.
The lack of a presumption of paternity, however, does not result in the automatic conclusion that blood tests must be ordered. Indeed, the authority for blood tests, found at Connecticut General Statutes § 46b-168
(a), clearly delineates that the decision as to whether to order such blood tests is discretionary with the court. Mr. Muniz invokes his due process rights under Article 1, Section 8 of the Connecticut Constitution CT Page 8655-D (but interestingly, he does not invoke Article I, Section 9 of the U.S. Constitution). He argues that a paternity determination will result in a deprivation of property rights by an ensuing support order. Indeed, Mr. Muniz testified that he was contesting paternity because he did not want to pay child support.
Considering his due process claims, the defendant is entitled to the entry of an order for blood/DNA testing, unless he is equitably estopped from asserting that entitlement. The doctrine of equitable estoppel has been found to apply in Connecticut and other jurisdictions to certain contested paternity claims.
 There are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist. Morrow v. Morrow, 165 Conn. 665, 669 (1974). CT Page 8655-E
Here, the plaintiff relied on the defendant's acts and words in the assumption of fathering numerous times through Felicia's 9 years. Early on, the plaintiff relied on his promise to raise Felicia as his daughter and, then, his day-to-day reaffirmation of that promise by deed and word. She relied on his offer of his surname for Felicia. She relied on his suggestion not to pursue Mr. Rice for child support. She, in this continuing reliance, ultimately married the defendant when he was "free" in a divorce; she sought no other support or paternity determination. Plaintiff, day in and day out, reaffirmed to her daughter that the defendant was her father, by reliance on him as such and regard for him as such with the child. Based upon his assurances and conduct, she allowed her daughter to think of the defendant as her father, and allowed him to enjoy the rewards of fatherhood with Felicia, and, before the world.
To date, reported decisions of equitable estoppel in Connecticut have recognized that the doctrine applies to avoid an injustice. Morrow, op cit.; Perkins v. Perkins,34 Conn. Sup. 187, 191-2 (1977); Remkiewicz v.Remkiewicz, 280 Conn. 114, 119 (1980). As noted by Teller, J. in Shelby v. Shelby, 13 CONN. L. RPTR. 130 (1994), other states have utilized the equitable estoppel CT Page 8655-F doctrine in regard to paternity decisions to, also, serve the best interest of the child.
 The relationship of father and child is too sacred to be thrown off like an old cloak, used and unwanted. We are dealing with the care and education of a child during [her] minority and with the obligation of the party who has assumed as a father to discharge it. The law is not so insensitive as to countenance the breach of an obligation in so vital and deep a relation, undertaken, partially fulfilled, and suddenly surrendered. In Re Marriage of Johnson,
Cal.Rptr. 121, 124, 8 Cal.App.3d 848 (1979).
The doctrine of equitable estoppel bars the defendant's claim for blood/DNA tests for a paternity determination. The court finds that Felicia's best interests, as well, would not be served by her being subjected to such a test. It would undermine her confidence and security in the father-daughter relationship that the defendant has established with her and nurtured since her birth.
For all the foregoing reasons, Motion(s) #109 and #113 are denied.
MUNRO, J. CT Page 8655-GG