[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is the defendant's motion to modify a pendente lite child support order. The bases for this motion are an alleged decrease in income since the last order and blood testing which excludes the defendant as the father of the older of the two children to whom the child support order pertains.
On January 20, 1998, the court held an evidentiary hearing on this motion and finds the following facts. When the parties met and began sexual relations, the plaintiff informed the defendant that she might be pregnant by another. Pregnancy was eventually CT Page 676 confirmed, and both parties recognized that, while it was possible for the defendant to be the father, it was also quite possible that he was not. On June 15, 1986, the plaintiff gave birth to a girl. The parties discussed, at that time, what last name the child should have. It was agreed that the child would bear the defendant's surname. Shortly thereafter, the plaintiff moved to Rhode Island to live with the defendant. The plaintiff applied for public assistance in that state and named her former boyfriend, Timothy Dunbar, as the father of the child. The Rhode Island authorities provided the plaintiff with documents necessary to begin paternity proceedings against Dunbar. When the defendant learned of this process, he tore up the documents because he wanted to avoid any contact between Dunbar and the child. The parties lived together, unmarried, for about three years until the plaintiff became pregnant with a second child. This pregnancy motivated the parties to marry on March 11, 1989.
On January 21, 1997, the plaintiff commenced this dissolution action. On March 10, 1997, a temporary child support order issued, by agreement, obligating the defendant to pay to the plaintiff $175 per week for both children. The agreement and order also required the plaintiff to consult with the defendant on major decisions affecting both children. According to his sworn financial statement on that date, the defendant grossed $724 per week income and netted $493 per week.
On April 21, 1997, the defendant moved to modify that order. On May 5, 1997, the court modified to obligation downward to $150 per week, again pertaining to both children. At that time, the defendant swore that his gross income was $507 per week with a net wage of $349 per week.
On September 10, 1997, the plaintiff moved to modify the order upward. On September 29, 1997, after a hearing, the court raised the obligation to $201 per week and $40 per week against an arrearage found to be $800. The defendant's financial affidavit disclosed a weekly income of $403 at that time.
On November 17, 1997, the defendant moved for blood testing to determine paternity, which request was granted by agreement. The defendant also moved to modify the child support order, and this motion is the subject of this decision.
Previous to November 17, 1997, the plaintiff had, on occasion suggested testing to ascertain paternity of the older child, but CT Page 677 the defendant always refused to submit to such tests because he feared the result would reveal conclusively that he was not the child's biological father. Until the November 1997 request, the defendant always treated the child as his own daughter, despite his knowledge that her parentage was uncertain. The test results exclude the defendant as the father of this child.
On September 22, 1997, the day the last modification hearing began, the defendant voluntarily took a leave of absence from his employment as a truck driver, and he entered the Day Kimball Hospital Mental Health Center. The defendant was distraught over his financial obligations among other things. He received biweekly disability payments of $722 from the middle of October 1997 to the end of the year. He has since returned to work at the same rate of pay, $13.55 per hour, and works forty hours per week. Before the most recent modification, the defendant regularly worked overtime and the same overtime work is available to him presently.
The blood testing cost $630 which fee was paid by the defendant. Because the results excluded the defendant, the defendant also requests that that fee be credited against his arrearage.
 I
The court concludes that the defendant has failed to demonstrate, by a preponderance of the evidence, a substantial change in his financial circumstances since September 29, 1997, justifying a reduction in his child support obligation. His hourly wage and available hours remain unchanged. Earning capacity, net actual earnings, is the critical factor. Lucy v.Lucy, 183 Conn. 230, 234 (1981). Consideration of earning capacity is especially appropriate where the obligor has voluntarily left employment or curtailed hours of work. Paddockv. Paddock, 19 Conn. App. 91, 95 (1989).
 II
Turning to the issue of paternity, the court holds that the defendant is equitably estopped from disclaiming he is the father of both children. The elements of estoppel applicable to such cases was set forth by our Supreme Court in Morrow v. Morrow,165 Conn. 665 (1974) at p. 669. The party claiming estoppel must establish that the other party engaged in action or CT Page 678 representations which were intended to induce the claimant to act in a particular way, and the claimant must have altered a course of action based on such inducement to the claimant's detriment.Id.
In the present case, the plaintiff has proven that the defendant consistently treated the older child as his daughter and provided financial and emotional support for the child for her entire life. He agreed with the plaintiff that the child should bear his surname. He convinced the plaintiff to refrain from having earlier blood tests to determine paternity. He persuaded the plaintiff to discontinue seeking public assistance and to avoid pursuing child support from Dunbar. He took these actions because he wanted Dunbar to play no role in the life of the child, and he accomplished that goal.
As a consequence, the child was raised by the plaintiff to believe the defendant was her biological father. The plaintiff failed to obtain public assistance to which she may have been entitled. The plaintiff failed to collect child support from Dunbar for nearly twelve years., Dunbar's whereabouts and wherewithal are unknown presently. The child's emotional state, if she should learn her true biological origin, may be negatively affected. "The relationship of father and child is too sacred to be thrown off like an old cloak." Perkins v. Perkins,34 Conn. Sup. 187, 190 (1977).
For these reasons, the motion to modify is denied.
SFERRAZZA, J.