trial court expressed its concern that an unsolicited amicus curiae brief could contain facts or arguments that prejudice the parties, or scandalous material about the parties or their attorneys that should not be before the court. See *Abington Ltd. Partnership* v. *Heublein,* 246 Conn. 815, 825–26, 717 A.2d 1232 (1998) (trial judge should have recused himself after visiting property that was subject of pending action and discussing case with person residing near property). Under the circumstances of this case, we conclude that the trial court reasonably could have found that a sanctions order was appropriate. We further conclude that the trial court did not abuse its discretion in requiring the defendant to read the Practice Book and to listen to civil procedure tapes.

The writ of error is dismissed.

In this opinion the other justices concurred.

W. *v.* W.
(SC 16429)

Sullivan, C. J., and Borden, Norcott, Katz and Zarella, Js.

Argued April 18—officially released July 17, 2001

*James H. Lee*, for the appellant (defendant).

*Stephen T. Kulig*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, C. J. This appeal from a marital dissolution judgment presents the issue of whether, under the circumstances of this case, the trial court properly estopped the nonbiological father of a minor child from denying his parenthood when a previously missing biological parent has been found. The defendant, the nonbiological father of the minor child involved in this appeal, claims that the trial court improperly concluded that he was estopped from continuing to deny his paternity of the minor child for the purposes of child support, despite the fact that the natural father had been located and presumably could be pursued for that support. The defendant argues that the financial detriment previously caused to the plaintiff, the child's mother, and to the child, no longer exists and that, as a result, equitable estoppel is now inappropriate. We affirm the trial court's judgment estopping the defendant from denying

paternity and ordering him to pay the plaintiff child support.

In the earlier appeal in this marital dissolution case, from the denial of a motion to modify a pendente lite child support order, this court held that the trial court had acted properly when it equitably estopped the defendant husband from denying paternity of the wife's older child. *W.* v. *W.*, 248 Conn. 487, 505, 728 A.2d 1076 (1999). We set forth guidelines outlining when a court properly may estop a party from denying paternity and the appurtenant child support obligations. We also concluded that the equitable estoppel doctrine imposes a burden on the party seeking to invoke the doctrine to demonstrate representations of financial and emotional support. Id., 502.

We then examined the findings by the trial court causing it to apply the doctrine in that case. Specifically, the trial court's decision had been predicated on the following facts. The defendant had always acted as if he were the father of the child, supplying her with emotional and financial support throughout her lifetime. Id., 504. In addition, his actions had induced the child and her mother to believe that he would always emotionally and financially support the child as his own. Id. Also, the child and mother had relied on those assurances to their present and future detriment. Id. The trial court had also relied upon the fact that the defendant's actions had interfered with the plaintiff's ability to pursue the biological father for child support. Id., 505. At the time of the trial court's decision, the whereabouts of the biological father were unknown. Id.

After the issuance of this court's opinion affirming the trial court's application of the equitable estoppel doctrine, and by the time of the final dissolution trial, the plaintiff had learned the alleged biological father's address, and both she and the child had spoken with him

on the telephone. Nonetheless, the trial court rendered judgment requiring the defendant to continue to pay child support. This appeal followed.[1]

In the present appeal, the defendant claims that because the biological father has been located and the mother is presumably able to pursue financial support from him, the defendant should no longer be estopped from denying paternity and providing support. The defendant argues that, since the putative father can be held responsible for child support, equitable estoppel against the defendant is no longer appropriate. We disagree and affirm the judgment of the trial court.

Our standard of review is necessarily the same as that which we applied in *W.* v. *W.*, supra, 248 Conn. 495–97. "To begin, it is well settled that judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the court correctly applied the law and could reasonably have concluded as it did. E.g., *Smith* v. *Smith*, 185 Conn. 491, 494, 441 A.2d 140 (1981); *Basile* v. *Basile*, 185 Conn. 141, 144, 440 A.2d 876 (1981); *McGuinness* v. *McGuinness*, 185 Conn. 7, 13, 440 A.2d 804 (1981). It is the sole province of the trial court to weigh and interpret the evidence before it and to pass upon the credibility of witnesses. *Smith* v. *Smith,* supra, 493. *Beede* v. *Beede*, 186 Conn. 191, 194–95, 440 A.2d 283 (1982).

"The party claiming estoppel—in this case, the plaintiff—has the burden of proof. *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 699, 590 A.2d 957 (1991). Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. *Dornfried* v. *October Twenty-Four, Inc.*, 230 Conn. 622, 636, 646 A.2d 772 (1994); *Middlesex Mutual*

---

[1] Pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c), this court transferred this appeal from the Appellate Court to itself.

*Assurance Co.* v. *Walsh,* supra, 699. A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there *is* evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. *Dornfried* v. *October Twenty-Four, Inc.,* supra, 636; see also *Barbara Weisman, Trustee* v. *Kaspar,* 233 Conn. 531, 541, 661 A.2d 530 (1995). The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* [181 Conn. 217, 221–22, 435 A.2d 24 (1980)]. Accordingly, we will reverse the trial court's legal conclusions regarding estoppel only if they involve an erroneous application of the law. See *Deer Hill Arms II Ltd. Partnership* v. *Planning Commission,* 239 Conn. 617, 628, 686 A.2d 974 (1996).

"Strong public policies have long formed the basis of the doctrine of equitable estoppel. The office of an equitable estoppel is to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties. . . . *State ex rel. DeGregorio* v. *Woodruff,* 135 Conn. 31, 36, 60 A.2d 653 (1948). No one is ever estopped from asserting what would otherwise be his right, unless to allow its assertion would enable him to do a wrong. *Hartford* v. *Mechanics Savings Bank,* 79 Conn. 38, 41, 63 A. 658 (1906).

"There are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not

exist. *Breen* v. *Aetna Casualty & Surety Co.*, 153 Conn. 633, 643, 220 A.2d 254 [1966]; *Themper* v. *Themper*, 132 Conn. 547, 550, 45 A.2d 826 [1946]. *Morrow* v. *Morrow*, [165 Conn. 665, 669, 345 A.2d 561 (1974)]. . . . *Remkiewicz* v. *Remkiewicz*, 180 Conn. 114, 119, 429 A.2d 833 (1980) . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) *W.* v. *W.*, supra, 248 Conn. 495–97.

Our previous decision affirming the trial court's application of the doctrine of equitable estoppel against the defendant is not altered as a result of the latest developments in this case. In *W.* v. *W.* supra, 248 Conn. 497–98, we articulated the elements that must be found in order to apply equitable estoppel in a child support action. "In the context of parental responsibilities, the duty to support the child is placed fairly on the nonparental party, not solely because of his voluntary assumption of a parental role, but, also because of the misleading course of conduct that induced the child, and the biological parent as the child's guardian, to rely detrimentally on the nonparental party's emotional and financial support of the child." Id. We concluded that the circumstances in *W.* met this test, and today we expand that holding to encompass the scenario as it exists at the present time. In child support cases, the mere knowledge of the putative parent's presence or whereabouts does not necessarily release the nonbiological parent from his or her represented responsibility upon which the child relied to his or her future detriment.

The defendant's representation of himself as the child's father is unchanged. As the trial court found in the first appeal, "the defendant had acted consistently as the father of the . . . child, providing emotional and financial support throughout her entire life. The court found further that the parties had raised the child to believe that the defendant is her father, and that indeed,

they had never told the child otherwise." Id., 492. Furthermore, it was the defendant's destruction of documents necessary to institute paternity proceedings that had originally prevented the plaintiff from attempting to contact the biological father for support. Id., 490. The defendant also urged the plaintiff not to seek the blood tests necessary for paternity proceedings. Id. He wanted the child to be raised as his own and to bear his last name as her own. "The trial court found further that the defendant had taken such actions because he did not want [the biological father] to play any role in the life of the child." Id.

The reliance by the plaintiff and the child upon this representation is also unaltered. The trial court concluded that the defendant's destruction of the paternity documents made it impossible for the plaintiff to apply for public assistance. As a result of this act, she had been precluded from seeking support from the biological father at the time of the child's birth and subsequently lost contact with him, becoming ignorant of his whereabouts. Most important, the child has, for the twelve years of her life, relied upon the defendant for support and care. This reliance continued to be viable even after the institution of the action to dissolve her parents' marriage.[2]

We must necessarily focus on the future detriment that will be caused by this reliance. The defendant argues that the knowledge of the putative father's whereabouts provides the plaintiff and the child with the legally liable source of support and, therefore, obviates the need for and reliance upon the defendant's support. He relies upon *Miller* v. *Miller*, 97 N.J. 154, 169, 478 A.2d 351 (1984). "If, as in the present case, the

---

[2] Before raising the issue of paternity, the defendant paid child support for the first ten months following the onset of the dissolution proceedings. *W.* v. *W.*, supra, 248 Conn. 504.

wife knows where the natural father is, she has the burden to bring him before the court and to seek child support from him. Once in court the burden is on the natural father to show why he should not, in equity, be required to pay child support for his children. . . . We emphasize . . . that the natural parent should always be considered the primary recourse for child support because society and its current laws assume that the natural parent will support his or her child. It is only when a stepparent by his or her conduct actively interferes with the children's support from their natural parent that he or she may be equitably estopped from denying his or her duty to support the children." Id.

We conclude that the *Miller* case provides support for the plaintiff's claim against the defendant. In *Miller*, the court concluded that the doctrine of equitable estoppel may be cautiously invoked when the stepparent has interfered with the natural parent's ability to provide support and when the court is considering permanent child support orders. Id., 157–58. The court determined that a more relaxed standard was appropriate for pendente lite orders of child support than for orders of permanent support. "[I]n a motion for pendente lite child support, [if] the natural parent demonstrates that he or she is not receiving support for the children from their other natural parent and establishes by affidavit that the stepparent's conduct actively interfered with the children's support by their natural parent, so that pendente lite support may not be obtained from the natural parent, the children should be awarded pendente lite support from the stepparent. . . . To be entitled to permanent child support . . . the party alleging equitable estoppel . . . has the burden to prove that [the nonbiological parent's] conduct established the three prerequisites to equitable estoppel—representation, reliance, and detriment." Id., 167.

It is this more stringent standard that we use in Connecticut. In the earlier appeal of the present case, we found that "[t]he [trial] court . . . concluded that the defendant's actions helped to prevent the formation of a loving and nurturing relationship with [the child's] natural father." *W.* v. *W.*, supra, 248 Conn. 504–505. We again emphasize the significance of this factor in our judgment here today. The nonbiological parent must have done some positive act—as was done in the present case—to estrange the child from her biological parent, thereby enabling the child to place her reliance on only the nonbiological parent himself. Here, the defendant did "actively interfere" with the potential support from the natural father by destroying the paternity documents. Despite the fact that he would now like to invoke the natural father's responsibilities to his child, the defendant cannot discard his own, self-created duties to the child he raised as his own. Therefore, he is properly estopped from doing so.

These factors of representation, reliance and detriment have not changed as a result of the discovery of the presumed biological father's address and telephone number. We note that there have been no blood tests performed to determine whether the individual so named is, indeed, the biological father. Even if the individual found were the biological father of the child, there is no evidence that he is able or willing to provide the financial support that the child needs and that she has received thus far from the defendant.[3] This uncer-

[3] In this regard, we part ways with the *Miller* court. "If the court finds that the natural father should not be required to pay child support due to the stepfather's conduct, the natural father having relied thereon and having placed himself in such a position that he is unable to meet that obligation, the stepparent should be responsible for the children's continued support." *Miller* v. *Miller*, supra, 97 N.J. 169. In our scheme, it is not necessary that the natural parent have relied upon the nonbiological parent's representations. In order to invoke estoppel, it is sufficient that the child has relied upon those representations to his or her detriment.

tainty shrouding the identity and the wherewithal of the alleged biological father does not alter the rightful reliance the plaintiff and child have placed upon the defendant since we cannot conclude that the element of reliance can be satisfied *in its place* as a result of the location of this individual. The future detriment we recognized in *W. v. W.*, supra, 248 Conn. 504, continues to exist in the present case. Consequently, the defendant is equitably estopped from the denial of his self assumed obligations owed to the plaintiff and the child.

Furthermore, even if it is the biological father who has been located at the address discovered by the plaintiff, this court does not have jurisdiction over him. He lives in Massachusetts. It is not alleged that he has ever been in Connecticut, that he has ever been married to the plaintiff, that he knows he is the father of the child, or that he has been served with any notice of these proceedings. As a result, this court cannot bring this individual before us pursuant to General Statutes §§ 46b-44 and 46b-46 in order to resolve the issue of support.[4] Therefore, we conclude that the trial court did not abuse its discretion in applying the doctrine of equitable estoppel in this case.

The judgment is affirmed.

In this opinion the other justices concurred.

[4] General Statutes § 46b-44 provides in relevant part: "(c) A decree dissolving a marriage or granting a legal separation may be entered if: (1) One of the parties to the marriage has been a resident of this state for at least the twelve months next preceding the date of the filing of the complaint or next preceding the date of the decree; or (2) one of the parties was domiciled in this state at the time of the marriage and returned to this state with the intention of permanently remaining before the filing of the complaint; or (3) the cause for the dissolution of the marriage arose after either party moved into this state. . . ."

General Statutes § 46b-46 provides in relevant part: "(b) The court may exercise personal jurisdiction over the nonresident party as to all matters concerning temporary or permanent alimony or support of children, only if: (1) The nonresident party has received actual notice . . . and (2) the party requesting alimony meets the residency requirement of section 46b-44."