[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is a paternity action commenced by the Department of Social Services pursuant to General Statutes § 46b-162. The petition alleges that the defendant Russell Martin is the father of a minor child, Devon Scott Ranney, born December 19, 1991 to the named plaintiff Pauline B. Hjarne. The defendant appeared by counsel and filed an answer generally denying the allegations of the complaint. He also moved for genetic tests. The motion was granted and the case set down for trial.
When the genetic test results failed to exclude him, the defendant amended his answer to interpose a special defense of estoppel. Specifically, the defendant asserts that the named plaintiff should be equitably estopped from claiming the defendant is Devon's father because "she knowingly allowed Lawrence Kanoa Ranney to be named as the child's father on his birth certificate, and assume the role as the child's father. . . ."
The DNA test on the defendant resulted in a 1,027 to 1 combined paternity index or a probability of 99.90% that the defendant is Devon's CT Page 5521-ab father (State's Exhibit C). Moreover, a previous DNA test on Lawrence Ranney (State's Exhibit A) excluded him as Devon's biological father. Notwithstanding the genetic results and the statutory presumptions they carry with them, the defendant argues that the actions of the plaintiff and of Ranney induced the defendant into believing he was not Devon's father, and that consequently and to his detriment he has been excluded from developing a nurturing relationship with the child.
Resolution of the defendant's claim requires additional factual findings. The plaintiff commenced a relationship with Lawrence Ranney in 1985. In 1988 they started living together. They remained together until July, 1996. They maintained a sexual relationship during much of that time, although it was not exclusive as to either of them. They had another child together in 1993. When Devon was born, both the plaintiff and Ranney knew that Ranney was not the child's father. Nonetheless, a few days after the birth, Ranney signed an unsworn "parentage statement" on the letterhead of Manchester Memorial Hospital stating that he was Devon's father. The plaintiff also signed the document over the following statement: "I, hereby consent to the acknowledgement of Lawrence Kanoa Ranney as the father of my child." A birth certificate was issued naming Ranney as Devon's father.
In 1997, after Ranney and Hjarne broke up, the plaintiff filed a custody action in the Superior Court. The court takes judicial notice of that file, entitled Hjarne v. Ranney, docket no. FA97-0716041. The handwritten petition states, inter alia: "Pauline Hjarne and Lawrence Ranney are the parents of Devon Scott Ranney 12-19-91 and Nathan Thomas Ranney 7-20-93." Although she was receiving public assistance in the form of Aid For Dependent Children at the time, she did not disclose the fact on her petition nor serve a copy on the Attorney General. On August 13, 1997, the court, Barall, J., issued an order granting Hjarne custody of both children. The court did not adjudicate parentage, nor does the file disclose any documentation other than the quoted statement in the petition.
In 1999 the Department of Social Services began an investigation to recoup public assistance money paid to Ms. Hjarne on behalf of her children. During this investigatory stage, she again named Ranney as father to both children. However, apparently Ranney indicated he was not Devon's father. The Department then administratively conducted a DNA test pursuant to its authority under General Statutes § 46b-168a. The test excluded him. Thereafter, the Department of Social Services commenced a paternity petition against Ranney, naming him as the father of Nathan only. That case, entitled Hjarne v. Ranney, docket no. FAOO-0630733 CT Page 5521-ac resulted in a paternity judgment establishing Ranney as Nathan's father.
Both Hjarne and Ranney admit that Devon recognizes Ranney as his father and that there is considerable bonding between the two. Neither Devon nor Nathan is aware that Ranney is not Devon's biological father. Ranney knew all along that he was not the child's father, but agreed that since the defendant was married to someone else and had a separate family, that he would act as the child's father. He believed that if he did not step in, Devon would never have a father. This lasted until after Ranney and the plaintiff broke up when child support became an issue. Nevertheless, both Hjarne and Ranney believe the court should adjudge Martin to be Devon's father.
 I
The defendant's attorney argues that if there had been a formal acknowledgment or a paternity adjudication, then a motion to open by Ranney might well be denied based on estoppel. There are numerous cases with just such a result. Perkins v. Perkins, 34 Conn. Sup. 187, 190,383 A.2d 634 (1977); Serrano v. Serrano, Superior Court, judicial district of New Haven, doc. no. FA84-0227731, 2000 Ct. Sup. 14599 (Jones,J., Nov. 27, 2000); Winter v. Winter, 21 Conn.L.Rptr. 285,1998 Ct. Sup. 675 (Sferrazza, J., 1998); Caster-Muniz v. Muniz-Rodriguez,18 Conn.L.Rptr. 467, 1996 Ct. Sup. 8655 (Munro, J., 1996); Colvin v.Perkins, 18 Conn.L.Rptr. 104, 1996 Ct. Sup. 4125-K (Alander, J., 1996);Judson v. Judson, 15 Conn.L.Rptr. 191 (Gill, J., 1995); Drakeford v.Ward, 15 S.M.D. ___, 2001 Ct. Sup. 15865 (2001); Batchelor v. Diagneault, 14 S.M.D. ___ (2000); Coyle v. Covington, 14 S.M.D. ___ (2000).
"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse. . . . Its two essential elements are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts to act on that belief, and that the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done." (Citations omitted; internal quotation marks omitted.) Bozzi v. Bozzi, 177 Conn. 232, 241-42, 413 A.2d 834
(1979).
The defendant relies heavily on W. v. W., 248 Conn. 487, 728 A.2d 1076
(1999), and W. v. W. 256 Conn. 657, 779 A.2d 716 (2001) as authority for CT Page 5521-ad his contention that the plaintiff should be estopped from claiming that he is the father of the child based on the conduct of both the plaintiff and Ranney. In the initial W. v. W., case, the plaintiff mother claimed that the defendant although not the biological father was equitably estopped from denying paternity of their oldest child in a dissolution action. The trial court was persuaded and estopped the husband from denying paternity and included the child in the pendente lite support order. On appeal, the Connecticut Supreme Court affirmed and endorsed the use of the doctrine of equitable estoppel to prevent the husband from denying paternity. W v. W., supra, 248 Conn. 491-92, 495, 497.
Thereafter, prior to the final dissolution trial, the alleged biological father surfaced. The defendant claimed that because the possible biological father had been located, estoppel was no longer appropriate. The trial court, Potter, J., rejected that argument and once again held that the defendant was estopped from denying parentage. The Supreme Court once again affirmed, holding that "the mere knowledge of the putative parent's presence or whereabouts does not necessarily release the nonbiological parent from his represented responsibility. . . ." W. v. W. supra,256 Conn. 662.
The W. v. W. twin cases are undoubtedly attractive to the defendant for the strong language in both decisions regarding the ongoing responsibility of the nonbiological parent. For example, in both cases, the court stated that this duty remains "not solely because of his voluntary assumption of a parental role, but, also because of the misleading course of conduct that induced the child, and the biological parent as the child's guardian, to rely detrimentally on the nonparental party's emotional and financial support of the child." W. v. W., supra,248 Conn. 497-98; W. v. W., supra, 256 Conn. 662. This court finds the case inapposite. In the present case, the defendant biological father proposes estoppel to defeat a finding of paternity. In the W. v. W. cases, estoppel was used to defeat a denial of paternity.
Furthermore, the defendant in W. v. W. was legally presumed to be the child's father. "Connecticut law has long provided that a child born in wedlock is presumed to be the legitimate child of the mother and her husband, even if conceived prior to the marriage." Weidenbacher v.Duclos, 234 Conn. 51, 69, 661 A.2d 988; see also, Holland v. Holland,180 Conn. 354, 357, 449 A.2d 1010 (1982); Schaffer v. Schaffer,187 Conn. 224, 226, 445 A.2d 589 (1982); Grant v. Stimpson, 79 Conn. 617,623, 66 A. 166 (1907). CT Page 5521-ae
In contrast, in the present case, notwithstanding numerous outward signs of paternity, including the birth certificate, parentage statement, and the custody action, Ranney was never actually legally established as Devon's father. In this State there are only three ways of legally establishing paternity: (1) the marital presumption if the mother and the putative father are married to each other; (2) adjudication of paternity by a court of competent jurisdiction; or (3) a formal acknowledgment of paternity in accordance with the acknowledgment statute.
The parentage statement signed by Ranney and Hjarne does not conform to the acknowledgment statute, General Statutes § 46b-172. The statement was not sworn by either the putative father nor the mother. In fact, the mother's statement doesn't even affirm that Ranney is the father; it merely indicates her "consent" to the acknowledgment. Nor is the document accompanied by an attested waiver of blood tests, right to trial and right to an attorney as was required by the statute as amended at that time. Public Act No. 91-391. The acknowledgment of paternity of the child has serious consequences for the parents and most profoundly for the child. As a statutory procedure which determines not only the rights but also the status of the parties, it is incumbent that the provisions of the statute be strictly observed. The parentage statement in this case doesn't even come close, as the State and plaintiff both recognize.Remkiewicz v. Remkiewicz, 180 Conn. 114, 120, 429 A.2d 833 (1980) (rejecting reliance on an affidavit of parentage to establish paternity).
The defendant argues that language in State v. Wolfe, 156 Conn. 199,206, 239 A.2d 509 (1968) supports the contention that the parentage statement is sufficient to establish Ranney as Devon's father. In that case the Connecticut Supreme Court "[concluded] that the defendant's unsworn but written acknowledgment of paternity, coupled . . . with his contract to support the child whose paternity he has admitted, [was] sufficient to" support the finding of paternity under the legally liable relative support statute, which defined a father as a male who has acknowledged paternity in writing, as that statute did not require a sworn, written acknowledgment of paternity. State v. Wolfe, supra,156 Conn. 205, 206. The decision holds that a document in which a putative father merely acknowledges paternity, but which is not sworn to, is evidence of paternity and can be the basis for a finding that a man is a "father" under the legally liable relative statute. Id., 205-05. See also Fischer v. Goldstein, 14 Conn. App. 487, 490, 542 A.2d 731 ("[t]he law does not require that an acknowledgment of paternity meet the formal CT Page 5521-af requirements of General Statutes § 46b-172 to serve as the basis for a paternity determination"), cert. denied, 208 Conn. 814, 546 A.2d 280
(1988); Donoghue v. McCormick, Superior Court, judicial district of New Haven at New Haven, doc. no. 410533 (Alander, J., December 15, 2000) (affirming a family support magistrate's finding of paternity based on the defendant's unsworn, written acknowledgment). This is not to say, however, that such evidence conclusively establishes paternity, nor does it automatically result in an automatic judgment of paternity as a sworn, written acknowledgment of paternity executed and filed in accordance with statutory requirements would. Remkiewicz v. Remkiewicz, supra, 180 Conn. 120 (affidavit of parentage was an evidential admission and not conclusive). Rather, such documents may provide evidence of paternity, but do not of themselves equal a judgment of paternity.
Ranney did signed an unsworn parentage statement. His name is on the birth certificate. He held himself out to the child, his family and society at large as the Devon's father for over ten years. In a paternity case against Ranney if the foregoing was the only evidence presented to the court, there would be a strong case to find that paternity had been established. However, the results of the DNA test conducted on Ranney, Hjarne and Devon, conclusively establish that Ranney is not the child's biological father. The paternity action brought against Ranney named only Nathan and not Devon as his son. Neither the State nor the plaintiff have given any indication that they intend to seek an opening of the judgment to claim paternity against Ranney and Martin would have no standing to do so. In any event the DNA test results rule out a successful paternity proceeding against Ranney.
The only case uncovered in which a similar estoppel claim was made, seeking to estop the establishment of paternity is Pagliaro v. Jones, Superior Court, judicial district of New Haven, doc. no. FA98-0412430,1999 Ct. Sup. 14901 (McLachlan, J., Nov. 22, 1999). The fact situation is actually quite similar to the present case except that the plaintiff mother was actually married to the man who helped her raise the child, and whose actions form the partial basis for the estoppel claim. As is the case here, the court found that the facts did not establish that the defendant was induced to believe he was not the father of the child. Moreover, the court observed that even if an inducement took place, the question of prejudice to the defendant is "problematic". After a review of sister state cases, Judge McLachlan concluded that "[t]he majority rule seems to be that the only prejudice that can be considered is the impairment of the right to obtain support from the natural father." Id. CT Page 5521-ag
As in the present case, the defendant in Pagliaro v. Jones underwent DNA testing, the results of which indicated a high probability that he was the child's biological father. The court found that the plaintiffs husband, and another man who fathered the plaintiffs other child, were both excluded. Therefore, as in the present case, application of estoppel against the paternity claim would render the child fatherless, leading to the conclusion that "[t]he court cannot fathom how it would be in the child's interest that he be deemed fatherless."
 II
There are additional impediments to the successful invocation of equitable estoppel by the defendant as a defense against this paternity claim. The petition presently before the court was initiated not by the named plaintiff mother, but by the State of Connecticut pursuant to its authority under General Statutes § 46b-162. "[E]stoppel may not generally be invoked against a public agency in the exercise of its governmental functions. . . ." (Internal quotation marks omitted.)Dornfried v. October Twenty-Four, Inc., 230 Conn. 622, 635, 646 A.2d 772
(1994); Coyle v. Covington, 14 S.M.D. ___ (2000); see also Dupuis v.Submarine Base Credit Union, Inc., 170 Conn. 344, 353, 365 A.2d 1093
(1976); Ammirata v. Zoning Board of Appeals, Superior Court, judicial district of Danbury at Danbury, Docket No. 335586 (Radcliff J.; January 7, 2000,).
There is a limited exception to this general rule wherein estoppel may be asserted against a public agency. See Dupuis v. Submarine Base CreditUnion, Inc., supra, 170 Conn. 354; Ammirata v. Zoning Board of Appeals, supra, Superior Court, Docket No. 335586. "[E]stoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency. . . . Finally, a claim for promissory estoppel will not lie against the state unless the party claiming estoppel would be subjected to substantial loss if the public agency were permitted to negate the acts of its agents." (Citation omitted; internal quotation marks omitted.) In re Michaela Lee R., 253 Conn. 570, 604, — A.2d — (2000). Here, the defendant's actions were not induced by an agent who had authority in such matters nor were special circumstances that would make it highly inequitable or oppressive not to estop the State. CT Page 5521-ah
Moreover, Connecticut has long recognized that children have a separate and independent interest in family relations matters. In re Bruce R.,234 Conn. 209-210; Nye v. Marcus, 198 Conn. 138, 502 A.2d 869 (1985);Guille v. Guille, 196 Conn. 260, 492 A.2d 175 (1985); Salvio v. Salvio,186 Conn. 311, 441 A.2d 190 (1982); Yontef v. Yontef, 185 Conn. 275,440 A.2d 899 (1981). Devon has a separate and distinct interest in the outcome of this proceeding. Andrews-White v. Mitchell,15 Conn.L.Rptr. 629,1995 Ct. Sup. 12880 (McWeeny, J. Nov. 13, 1995); Taylor v. Martin, 14 S.M.D. ___, 26 Conn.L.Rptr. 404 (2000). Pullen v. Cox, 9 S.M.D. 134, 145 (1995). Regardless of what claims the defendant can assert against the plaintiff, or Ranney or even the State of Connecticut he clearly can not assert an estoppel claim against the minor child. To preclude the rights of the plaintiff to pursue the claim for paternity or even just the claim for support inevitably prejudices Devon's rights. Therefore for this reason alone the defendant's special defense must fail.
 III
The court also finds that the defendant has failed to sustain his affirmative burden of proof of the factual foundation for his estoppel claim. As previously stated, in order to prove estoppel, he must prove that the plaintiff induced him to believe in the existence of certain facts, in this case either that he was kept ignorant of the birth of the child or that Ranney was the child's father. There is conflicting testimony as to how much the defendant knew. The plaintiff says that the defendant knew he was the biological father and visited the kid, albeit clandestinely on several occasions.
At the time Devon was conceived, the plaintiff was cohabiting with Ranney but were both "seeing different people". The defendant was married and residing with his wife. Neither party wins any prizes for fidelity or integrity. There are a number of flat contradictions in the testimony of the plaintiff versus that of the defendant.
Hjarne maintains that Martin not only knew she was pregnant but that the pair had discussed the future including Martin's aversion to fathering the child. Hjarne says she called Martin when Devon was born, and that several times in the next couple of years she arranged surreptitious meetings with Martin so he could see the child. These meetings were arranged in venues such as parking lots. During this time period she states that Martin admitted that he was Devon's father at least in their private discussions. CT Page 5521-ai
Martin admits that he had sexual intercourse with Hjarne during the time period during which Devon was conceived. He admits to a relationship which lasted about eight months. He denies that he knew of her pregnancy, that she ever informed him that he was the father of her child, or that he had ever seen the child. He claims that his first knowledge of the child was a contact from the Department of Social Services preparatory to the filing of this action or possibly the service of the petition itself.
It is up to this court, as the trier of fact, to determine the credibility of witnesses and the weight to be given to their testimony.Powers v. Olson, 252 Conn. 98, 105, 742 A.2d 799 (2000); Leo v. Leo,197 Conn. 1, 4, 495 A.2d 704 (1985); Griffin v. Nationwide Moving Storage Co., 187 Conn. 405, 422, 446 A.2d 799 (1982); Riccio v. Abate,176 Conn. 415, 418, 407 A.2d 1005 (1979); Raia v. Topehius, 165 Conn. 231,235, 332 A.2d 93 (1973); Shearn v. Shearn, 50 Conn. App. 225, 231,717 A.2d 793 (1998); Cook v. Bieluch, 32 Conn. App. 537, 549,629 A.2d 1175, cert. denied 228 Conn. 911, 635 A.2d 1229 (1993); Meir v.Meir, 15 S.M.D. ___ (2001); Cruz v. Kourpouanidis, 12 S.M.D. 38, 39 (1998); Hepburn v. Hepburn, 8 S.M.D. 126, 133 (1994); Fretina v.Fretina, 5 S.M.D. 139, 142 (1991).
"A trier of fact is free to reject testimony even if it is uncontradicted; and is equally free to reject part of the testimony of a witness even if other parts have been found credible." (citations omitted) Barrila v. Blake, 190 Conn. 631, 639, 461 A.2d 1375 (1983); see also Mather v. Griffin Hospital, 207 Conn. 125, 145, 540 A.2d 666
(1988); Bieluch v. Bieluch, 199 Conn. 550, 555, 509 A.2d 9 (1986); C. Tait J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 3.1, pp. 36-37. The court has the right to accept part and disregard part of the testimony of any witness. Smith v. Smith, 183 Conn. 121, 123, 438 A.2d 842
(1981); Rood v. Russo, 161 Conn. 1, 3, 283 A.2d 220 (1971); Clark v.Haggard, 141 Conn. 668, 674, 109 A.2d 358 (1954); Baretta v. T TStructural, Inc., 42 Conn. App. 522, 527, 681 A.2d 359 (1996); Dawkinsv. Nash, 15 S.M.D. ___, 7 Conn.Ops. 1302 (2001); Lynk v. Lynk, 11 S.M.D. 233, 241 (1997); Carli v. Ruszala, 10 S.M.D. 320, 321 (1996); Tsirigotisv. Tsirigotis, 9 S.M.D. 152, 155 (1955); Kimery v. Kimery, 9 S.M.D. 54, 56 (1995); Berluti v. Berluti, 5 S.M.D. 377, 382 (1991).
The plaintiff was the more credible witness as to the historical facts. She was more consistent and direct, compared to the defendant who appeared disingenuous and even evasive at times. Moreover, the court is unimpressed with the defendant's arguments for discrediting CT Page 5521-aj Hjarne. For example, in his brief he asks, if Martin had known about the child, "why would they need to skulk around in parking lots?" One can believe or disbelieve that Hjarne favored such arrangements in order to protect her relationship with Ranney. However, as to Martin, this conduct is entirely consistent with the plaintiffs claim that he did not want his wife, his children or his subsequent paramour to know of his relationship to Hjarne or the existence of the child. The defendant had more reason than Hjarne to hide the relationship, as well as the existence of the child.
Accordingly, the court finds that the defendant knew the plaintiff was pregnant while they were dating and he knew that the baby was probably his. Moreover, the defendant met with the plaintiff on several occasions so that he could see the child. Although the defendant denies these meetings, the plaintiff credibly testified that these clandestine meetings occurred during the first four years of the child's life. Additionally, the defendant knew that the plaintiff was in a relationship with Ranney after the child was born and that he was caring for the child as if the child were his. Rather than assert any parental rights that he may have had, the defendant instead allowed Ranney to take on the role of father to the child and to raise the child with the plaintiff. Thus, it can not be said that the actions of the plaintiff and Ranney prevented the defendant from establishing a relationship with the child.
Even if the foregoing findings could somehow be interpreted as supporting a factual basis for estoppel the court should finds that the defendant is barred from claiming estoppel against the plaintiff because he comes before the court with unclean heads. "The clean hands doctrine, also referred to as the doctrine of unclean hands . . . derives from the equitable maxim that he who comes into equity must come with clean hands." (Citation omitted; internal quotation marks omitted.) Thompsonv. Orcutt, 257 Conn. 301, 302 n. 1, 777 A.2d 670 (2001). "[A]pplication of the doctrine of unclean hands rests within the sound discretion of the trial court." (Internal quotation marks omitted.) Id., 308. This doctrine "expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue." (Internal quotation marks omitted.) Id., 310.
 IV
As stated earlier, this child has a separate and independent interest in the outcome of this case. The very right of the child to knowledge of his parentage is among the factors to be weighed. Johnson v. Domina, CT Page 5521-ak Superior Court, Judicial District of Hartford, doc. No. FA88-0340848,1998 Ct. Sup. 11005 (Dranginis, J., Sep. 24, 1998) ("the right of the child to knowledge and establishment of paternity supercedes any interest the court might have in preserving a judgment entered by default. . . . This child's interest in preserving rights which grow from the biological father must take precedence even over a ten year old judgment of the court."); Lillibridge v. Lillibridge, Superior Court, Judicial District of Hartford, doc. No. FA89-0356816 (Dranginis, J., October 21, 1998) ("The child has a right to know for sure whether or not the defendant in this case . . . is indeed [his] father. [His] property rights are at interest here. . . .") "[T]he issue of paternity is of paramount importance to the child." Palomba v. Gray, 208 Conn. 21, 37, 543 A.2d 1331
(1988) (Shea, J. concurring). "It is in the child's interest not only to have it adjudicated that some man is his or her father and thus liable for support, but to have some assurance that the correct person has been so identified." (Emphasis in original; internal quotation marks omitted.)Lavertue v. Niman, 196 Conn. 403, 409, 493 A.2d 213 (1985).
Financial support is linked to the best interests of a minor child. "Connecticut child support enforcement legislation clearly evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re Bruce R., 234 Conn. 194, 209,662 A.2d 107 (1995). Support is one of the best interest considerations the court must consider. Id., 210-12; In Interest of K. J. K.,396 N.W.2d 370. 371-72 (Iowa App. 1986); In Interest of A. B.,151 Wis.2d 312, 322, 444 N.W.2d 415 (Wis.App. 1989).
The DNA results preclude anyone else other than the defendant from being found to be Devon's father. The defendant is correct when he asserts that establishing a normal father-son relationship and bonding with the child will be quite difficult at this late date this is not cause to deny the relationship. A failure to enter a paternity judgment would not only deny Devon his natural father, but would deprive him of financial support. Such an outcome is intolerable.
 V
For the foregoing reasons the court finds for the plaintiffs on the complaint and on the special defense. The defendant's estoppel argument cannot be sustained. Based on the testimony and the DNA evidence, which exceeds the statutorily presumptive level, the court hereby enters judgment that the defendant Russell Martin is the father of the minor child Devon Scott Ranney born on or about December 19, 1991 to the named plaintiff Paula Hjarne and he stands charged with the maintenance and CT Page 5521-al support of said child with the assistance of the plaintiff mother to the extent applicable.
 VI
paternity having been established it now becomes the duty of the court to establish a child support order and calculate the arrearage for past due support. Both parties submitted financial affidavits reflecting their current financial situation. There were only a few disagreements impacting the computation of the support order.
The defendant pays child support for a child of his marriage pursuant to a dissolution judgment in New Britain. On his submitted guidelines calculation, he claimed a deduction on line 8 for this paid order in the amount of $105.00. Both competing guidelines computations included this number. While the defendant's claim that he is paying this order is uncontroverted, the actual child support order is actually only $95.00 per week. The other $10.00 payment is on the arrearage, which is not deductible for purposes of the child support guidelines.
The defendant's guidelines worksheet lists the plaintiffs income as $322.00 per week. This amount was her income at a prior job and is properly included in guidelines calculations applicable to the arrearage. However, at present, the plaintiff is unemployed, receiving supplemental security income (SSI) and is otherwise engaged in raising her children. Such income is specifically excluded from gross income in the determination of child support. Regs., Conn. State Agencies § 46b-215a-1
(11) (A) (ix) and (B) (ii). The defendant suggests that the court entertain a deviation based on the plaintiffs prior earnings. However, the State Supreme Court has ruled that "deviation from the guidelines cannot be premised on the availability of income attributable to [exempt] sources." Marrocco v. Giardino, 255 Conn. 617, 630, 767 A.2d 720 (2001). Therefore, the present income of the plaintiff must be considered zero for purposes of calculating current child support and no deviation is appropriate.
Accordingly, the court finds the plaintiffs gross and net income to be zero for computation of child support. The defendant's gross income is $1,015.07 per week. After all applicable deductions including health insurance and payment of his other child support order, his net income is $486.43 per week. The presumptive child support order is $116.00 per week and the court finds no reason to deviate. The defendant is ordered to pay $116.00 current support. In consideration of his other support obligation, the court will grant a deviation on the arrearage payment order to $6.00 per week, making a total payment of $122.00. These orders CT Page 5521-am are effective retroactive to April 16, 2002.
With regard to arrearages, the defendant claims that even if the estoppel claim is rejected as to the issue of paternity, it should apply in whole or in part against the arrearage claim. The court finds, however, that the same impediments apply. Once again, even if the court found valid grounds to estop the plaintiff mother, there is no valid reason to estop the past due support claim as to the State or the minor child. Nor is there cause to grant a deviation to reduce the arrearage because of the lateness of the claim. As this court has pointed out on other occasions, "the legislature not only anticipated the possibility of a late paternity claim, but attempted to balance the equities of the child versus the putative father by extending the statute of limitations to eighteen years but limiting liability for past due support to three years next preceding the filing of the petition. General Statutes §46b-160 (a); see State of Florida v. Backlund, 2 S.M.D. 61, 69 (1988)"Reynolds v. Rucci, 9 S.M.D. 170, 179 (1995).
The defendant offered a calculation by annualizing incomes for each calendar year of the reachback. A separate financial affidavit was submitted for each calendar year disclosing the annualized income and deductions for each year. The State and plaintiff do not dispute the resulting presumptive child support and stipulate as to the time period applicable. This calculation generates a total of $22,844.41. For the period of time in which Temporary Family Assistance was provided by the State, the ability to pay calculation slightly exceeds the total paid by the State. Therefore, the accrued maintenance limits the amount due to the State, with the balance owed to the plaintiff. The court finds arrearages of $16,316.41 to the plaintiff and $6,528.00 to the State of Connecticut as of April 15, 2002.
As required by the guidelines, the court order each parent to provide medical and dental insurance for Devon as available through employment, union or group plan. The provisions of General Statutes § 46b-84 (e) are incorporated as in fully set forth herein. The defendant is ordered to pay 76% and the plaintiff 24% of any uninsured or unreimbursed medical or dental costs that exceeds the first $100 per year. The defendant is ordered to pay 76% of any reasonable, necessary and employment-related day care costs.
The defendant is ordered to pay the support order to the State in accordance with the direction of the support enforcement division. Immediate income withholding is ordered. Notwithstanding such order the defendant is ordered to make payments to the State's depository until the CT Page 5521-an full order is withheld from his pay and at any time thereafter in which the full order is not withheld. Costs are taxed in favor of the State in the amount of $33.20.
BY THE COURT
_____________________ Harris T. Lifshitz Family Support Magistrate